# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD., | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 24-50221 (JTD) |
| ALEKSANDR "SASHA" IVANOV, NUMERIS LTD., DLTECH LTD., and JOHN DOES 1-20, | **Obj. Deadline: 1/16/25 at 4:00 p.m. (ET)** **Hrg. Date: 1/23/25 at 10:00 a.m. (ET)** |
| Defendants. | |

## DEFENDANT ALEKSANDR "SASHA" IVANOV'S MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS

**McDERMOTT WILL & EMERY LLP**
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
E-mail: dhurst@mwe.com

**McDERMOTT WILL & EMERY LLP**
Joseph B. Evans (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
E-mail: jbevans@mwe.com
      dazman@mwe.com

Sagar K. Ravi (admitted *pro hac vice*)
The McDermott Building
500 North Capital Street, NW
Washington, DC 20001
Telephone: (202) 756-8043
E-mail: sravi@mwe.com

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases (the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 3

STATEMENT OF FACTS ............................................................................................... 6

ARGUMENT ................................................................................................................... 11

      I.      Mr. Ivanov's Forthcoming Motion to Dismiss Will Be
            Dispositive of the Entire Adversary Proceeding Against Him ....................... 13

      II.     This Adversary Proceeding Is in Its Earliest Stages, and Neither
            the Court nor the Parties Have Expended Significant Resources
            on This Case ...................................................................................................... 15

      III.    Alameda Will Not Be Unduly Prejudiced by a Temporary Stay
            of Discovery. ..................................................................................................... 16

      IV.    Mr. Ivanov Will Experience Significant Hardship If Forced to
            Participate in Discovery in an Adversary Proceeding in Which
            the Court Lacks Jurisdiction. ............................................................................ 17

CERTIFICATION UNDER FRCP 37(A)(1) AND LOCAL RULE 7026-1(D) ..................... 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actelion Pharm. Ltd. v. Apotex Inc.*,
    No. 12-5743(NHL/AMD), 2013 WL 5524078 (D.N.J. Sept. 6, 2013)...................................13

*Alameda Rsch. Ltd. v. Platform Life Scis. Inc.*,
    No. AP 23-50444 (JTD), 2023 WL 8814216 (Bankr. D. Del. Dec. 20, 2023).................13, 14

*Baquero v. Mendoza*,
    No. CV1815081KMMAH, 2019 WL 13250988 (D.N.J. Mar. 13, 2019) ...............................13

*Bataan Licensing LLC v. DentalEZ, Inc.*,
    No. 22-CV-238, 2023 WL 143991 (D. Del. Jan. 10, 2023)..............................................15, 16

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
    No. CV 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020)......................................12

*Coastal States Gas Corp. v. Dep't of Energy*,
    84 F.R.D. 278 (D. Del. 1979) ...............................................................................................11

*In re Copper Tubing Litig.*,
    No. 04-2771 DV, 2006 WL 8434911 (W.D. Tenn. Oct. 3, 2006) .........................................18

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)..............................................................................................................11

*Eagle Pharms., Inc. v. MRIGlobal*,
    No. 21-CV-20145-ES-LDW, 2022 WL 18621010 (D.N.J. Aug. 9, 2022)......................15, 17

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
    No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010).................................................16

*Eye Care Ctr. of N.J., P.A. v. Twin City Fire Ins. Co.*,
    No. 20-CV-05743-KM-ESK, 2020 WL 7227186 (D.N.J. Nov. 20, 2020)........................16, 17

*Fernsler v. Swatara Twp. Police Dep't*,
    No. 1:24-CV-1253, 2024 WL 4372307 (M.D. Pa. Oct. 2, 2024) .....................................12, 16

*Gurmessa v. Genocide Prevention in Eth., Inc.*,
    No. CV 21-869-RGA, 2022 WL 608924 (D. Del. Feb. 23, 2022) .........................................14

*Harman v. Datte*,
    427 F. App'x 240 (3d Cir. 2011) ...........................................................................................11

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................14

*Jones v. Mirza*,
    No. CV 15-1017-RGA, 2016 WL 4203814 (D. Del. Aug. 8, 2016)........................17

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,
    No. CV 14-1192-LPS-CJB, 2015 WL 1737476 (D. Del. Apr. 9, 2015)................12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..............................................................................11

*Mann v. Brenner*,
    375 F. App'x 232 (3d Cir. 2010) ...............................................................11

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)....................................................................14

*Moore v. Mann*,
    No. 3:CV-13-2771, 2015 WL 672444 (M.D. Pa. Feb. 17, 2015) ..........................13

*Pfizer Inc. v. Johnson & Johnson*,
    No. 17-cv-4180, 2018 WL 1071932 (E.D. Pa. Feb. 27, 2018) ................................13

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
    819 F.2d 434 (3d Cir. 1987)......................................................................4

*Sea Eagle Ford, LLC v. Texas Quality Well Serv., LLC*,
    No. 17-CV-02141-KMT, 2017 WL 11635035 (D. Colo. Nov. 16, 2017)..............18

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)..............................................................................14

*Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*,
    No. 2:13-CV-1261, 2014 WL 1045994 (S.D. Ohio Mar. 17, 2014)........................18

**Other Authorities**

Fed. R. Civ. Pro. 1................................................................................11

Fed. R. Civ. Pro. 12(b)(2) ...............................................................13, 18

Fed. R. Civ. Pro. 26..............................................................................11

Defendant Aleksandr "Sasha" Ivanov ("Mr. Ivanov") hereby moves (the "Motion to Stay") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") staying discovery in this adversary proceeding (the "Adversary Proceeding") pending resolution of Mr. Ivanov's forthcoming motion to dismiss based on lack of personal jurisdiction, among other potential grounds (the "Motion to Dismiss").

## INTRODUCTION

1.       Alameda Research Ltd. ("Alameda"), the sole plaintiff in this action, is a British Virgin Islands ("BVI") company that was operated out of the Bahamas and part of one of the biggest financial frauds in history. As part of that fraud, Alameda made risky and "bad or illiquid" investments,[2] which resulted in Debtors' bankruptcy. Now through this Adversary Proceeding, Alameda is asserting claims against Mr. Ivanov—a Dubai resident who has never been a U.S. citizen nor a U.S. resident—to recover purported losses from speculative investments that it made in a decentralized cryptocurrency liquidity pool governed by Seychelles law.

2.       This matter has no connection to the United States. Neither Alameda nor Mr. Ivanov were based in the United States. The transactions at issue were subject to Terms of Use (which Alameda agreed to by using the relevant website) that prohibit U.S. persons or entities from using the cryptocurrency liquidity pool on which the transactions occurred. Those Terms of Use also have a Seychelles choice of law provision and require disputes to be resolved through arbitration in the Seychelles. It is therefore not surprising that the complaint filed by Alameda (the "Complaint" or "Compl." [A.P. D.I. 4]) fails to mention the United States a single time. Due

---

[2]     *See Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* at 1 [D.I. 19143] (the "Disclosure Statement"). The designation "D.I." refers to documents filed on the docket in the main bankruptcy proceeding at Case No. 22-11068 (JTD). The designation "A.P. D.I." refers to documents filed on the docket in this Adversary Proceeding at Case No. 24-50221 (JTD).

to the complete lack of any connection to the United States, this court lacks personal jurisdiction over Mr. Ivanov.

3.       Putting aside this incurable jurisdictional defect, Alameda seeks through this Adversary Proceeding the turnover of assets that Mr. Ivanov does not own, control, or have the ability to transfer. There is not, as Alameda wrongly contends, some $90 million sitting in a decentralized liquidity pool that Mr. Ivanov can send to Alameda. The Vires.finance ("Vires") liquidity pool that Alameda invested in dropped significantly in value, and with that drop, much of the value Alameda provided was eliminated. But Alameda received exactly what it paid for— liquidity pool tokens that gave it the ability to redeem for a portion of what remains in the liquidity pool. And in fact, Alameda—not Mr. Ivanov—still has access to its account holding those tokens today. Alameda's losses may be the consequence of yet another risky investment made by the criminal enterprise it was a part of. But this case is nothing more than that.

4.       Finally, there is not a single allegation in the Complaint that Mr. Ivanov solicited any investments from Alameda. And there certainly are no allegations that any such activities occurred in the United States or were directed towards any U.S. person or entity. The absence of any such allegation is for good reason—none of that ever occurred. To the contrary, Alameda did not talk to Mr. Ivanov at all about participating in Vires. Instead, Alameda, a foreign entity, took it upon itself to visit a foreign website, Vires.Finance, and agree to Terms of Use governed by foreign law representing it was a foreign entity not located in the United States. That foreign entity then used that foreign website to invest $90 million in the Vires liquidity pool without once consulting Mr. Ivanov or anyone else known to Mr. Ivanov concerning that investment. It was not until later that Mr. Ivanov found out that Alameda had invested in Vires and then he called out Alameda for market manipulation in April 2022—months before the massive fraud it and its

executives committed became known to the world. After Mr. Ivanov exposed Alameda's role in destabilizing the cryptocurrency ecosystem it invested in, Alameda immediately repaid its loans and ceased any further investment activity on Vires.

5.      Despite Mr. Ivanov's strong defenses to the allegations of the Complaint and this Court's clear lack of personal jurisdiction over Mr. Ivanov, Alameda's counsel has refused to agree to postpone discovery until the Court can consider Mr. Ivanov's forthcoming Motion to Dismiss. Alameda's counsel has also refused to provide Mr. Ivanov's counsel with any theory as to the Court's personal jurisdiction over him, which may have avoided unnecessary motion practice if a clear jurisdictional basis was proffered. However, in an effort to come to an agreement on an overall schedule, Mr. Ivanov agreed to the filing of a proposed case management plan on December 23, 2024 (*see Case Management Plan and Scheduling Order* [A.P. D.I. 4] (the "CMO")). Pursuant to the CMO, Mr. Ivanov will file his Motion to Dismiss based on lack of personal jurisdiction and other potential grounds in approximately two weeks, by January 24, 2025. Absent the Court's granting of a stay, discovery is scheduled to begin on January 27, 2025. Mr. Ivanov is now filing this Motion to Stay on an expedited timeline to protect himself from engaging in burdensome, wasteful, and unnecessary discovery.

## SUMMARY OF ARGUMENT

6.      As noted above, Alameda is a BVI company that was operated out of the Bahamas at all relevant times. Mr. Ivanov resides in the United Arab Emirates ("UAE"), is not a U.S. citizen, and has never lived in the United States. The investments at issue in this Adversary Proceeding were initiated by Alameda on Vires and were subject to Terms of Use governed by Seychelles law that, among other things, required Alameda to guarantee that it was not a U.S. citizen, resident, or entity and that it was not acting on behalf of a U.S. person.

7.     The only reason Mr. Ivanov is here is because Alameda hired someone to serve him while he was attending a conference in Thailand. (*See Affidavit of Service* at 8-9 [A.P. D.I. 3].) But the fact that Alameda was able to serve Mr. Ivanov does not mean that they can force him to defend himself in U.S. court. It is after all Alameda's burden to establish the basis for the Court to exercise personal jurisdiction over Mr. Ivanov. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) ("Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.").

8.     A stay of discovery is clearly appropriate under the circumstances presented here. Courts in this Circuit consider four factors when determining whether to grant a stay request: (1) whether a stay would simplify the issues and the trial of the case; (2) whether discovery is complete and/or a trial date has been set; (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (4) whether denial of the stay would create a clear case of hardship or inequity for the moving party. Here, all of these factors strongly favor a stay.

9.     *First*, the forthcoming Motion to Dismiss based on lack of personal jurisdiction, if granted, will dismiss the entire case against Mr. Ivanov and there will be no more issues for the Court to decide. The only way the Motion to Dismiss will not significantly simplify the issues in this case is if the Court denies it in its entirety. But given the Complaint's total lack of allegations connecting this Adversary Proceeding to the United States, Mr. Ivanov submits that there is a strong basis for a lack of personal jurisdiction in this case.

10.     *Second*, this case is in the earliest stages of litigation. Aside from the filing of the Complaint and the proposed CMO, there have been no other developments in this Adversary

Proceeding. No discovery has begun, and no trial or hearing date has been set. Neither the Court nor the parties have invested significant resources in this Adversary Proceeding, making a stay all the more appropriate.

11.     *Third*, Alameda will not experience any undue prejudice caused by a limited stay of discovery while the Court considers Mr. Ivanov's Motion to Dismiss. The Adversary Proceeding relates to investments Alameda made in March 2022, almost three years ago now, and it was filed to recover estate assets for distribution to Debtors' creditors. As Debtors have widely publicized, Debtors began distributing payments to creditors on January 3, 2025, and the estate's current assets are so valuable that nearly all the customer and general unsecured creditors will be repaid in full *plus interest*.[3] Thus, a short stay will have little to no impact on the value of distributions or when creditors will receive their payments.

12.     *Finally*, Mr. Ivanov, by contrast, is an individual who resides thousands of miles away and has had very limited contact with the United States (let alone contact related to the claims in this Adversary Proceeding). Forcing a foreign individual like Mr. Ivanov to participate in costly and burdensome discovery in an Adversary Proceeding in which the court likely has no jurisdiction over him is patently unfair and a violation of due process, particularly in light of the minimal inconvenience to Alameda.

13.     This is not a situation where Mr. Ivanov is seeking to prolong or avoid discovery just for the sake of delay. Mr. Ivanov simply seeks to stop needless discovery so that the Court may consider the merits of his dispositive Motion to Dismiss based on the due process-based personal jurisdiction protections of the Fourteenth Amendment afforded to foreign defendants.

---

[3]     *See* Disclosure Statement at 2 (explaining that "the Plan does more than return Petition Date value to creditors: it includes potential incremental recoveries to compensate creditors for the time value of their money trapped at the FTX Group since the Petition Date" and estimating "that customers and digital asset loan creditors will recover between 119% and 143% of their Petition Date claim values").

Once the Court considers the Motion to Dismiss, it should become abundantly clear that discovery is premature, moot, and/or unnecessary given the incurable lack of personal jurisdiction over Mr. Ivanov and the need for a complete dismissal. Alternatively, should the Court deny Mr. Ivanov's Motion to Dismiss, he will be prepared to promptly engage in discovery pursuant to the overall timeline of discovery laid out in the proposed CMO (starting upon the denial of the Motion to Dismiss).

14.     For these reasons, Mr. Ivanov respectfully submits that the Court should grant Mr. Ivanov a limited stay of discovery while the parties brief the Motion to Dismiss and the Court decides for itself whether it has personal jurisdiction over Mr. Ivanov or should otherwise dismiss the case in its entirety.

## **STATEMENT OF FACTS**[4]

15.     Mr. Ivanov has been an entrepreneur in the cryptocurrency industry since 2013 with the goal of making advanced blockchain platforms accessible to everyone, including particularly those without computer or technical skills. (Compl. ¶ 21 & n.2.) As will be established in Mr. Ivanov's forthcoming Motion to Dismiss, Mr. Ivanov resides in the UAE and has never been a citizen or resident of the United States.

16.     Mr. Ivanov is the founder of Waves Tech, which is a decentralized ecosystem of blockchain solutions and products, with a focus on decentralized finance or DeFi. (*Id.* ¶ 26 & n.2.) This ecosystem offered a decentralized cryptocurrency exchange called the Waves Exchange ("Waves"). (*Id.*) Waves had its own native cryptocurrency token called WAVES, which users could trade on Waves and other cryptocurrency platforms. (*Id.*). Waves also offered another token

---

[4]     For the purposes of this Motion to Stay only, which does not at this time rely on any disputed issues of fact, the allegations set forth in the Complaint are assumed to be true.

called Neutrino USD ("USDN"), which was an algorithmic stablecoin that was pegged 1:1 to the

U.S. dollar. (*Id.* ¶ 27.)

17.     Waves also offered a liquidity and lending pool called Vires. (*Id.* ¶ 28.) On Vires,

users could borrow and lend different cryptocurrencies, and lenders could earn interest on the

stablecoin collateral they deposited on Vires. (*Id.*) Users also had governance rights in the Vires

decentralized autonomous organization (the "Vires DAO"), which allowed users to put forward

and vote on governance proposals relating to Vires. (*Id.*)

18.     Users on Vires, including Alameda, were subject to Terms of Use that were last

updated on February 10, 2022, before Alameda made its investments on Vires, and governed by

Seychelles law. (*Id.* ¶ 28 n.19 (linking to the Terms of Use)). As relevant here, the Vires Terms of

Use stated, among other things, the following:

    a.     "By using the [Vires] Protocol in any capacity, you agree that you have

read, understood, and accepted these Terms . . . .  If you disagree, you must not use the Protocol

in any way."

    b.     "You guarantee that you will only use the Protocol for lawful purposes and

in accordance with these Terms."

    c.     "[Y]ou guarantee that (1) you are not a US citizen, resident, or entity, nor

are you get access to and using the Website [https://vires.finance] or signing on behalf of a US

Person . . . ."

    d.     "You guarantee that you are not acting for the purpose of speculative

investment."

    e.     "By accessing and using the Protocol, you represent that you understand the

inherent risks associated with using cryptographic and blockchain-based systems and that you have

a working knowledge of the usage and intricacies of digital (crypto) assets. You further understand that the markets for these digital (crypto) assets are highly volatile. . . . You further acknowledge that we cannot be held liable for any resulting losses that you experience while accessing or using the Protocol. You understand and agree to assume full responsibility for all the risks of accessing and using and interacting with the Protocol."

f.    "The trading market for crypto assets is highly unstable. Prices for crypto assets can and do fluctuate at any given moment for any reason. Due to such price fluctuations, you may gain or lose value in your crypto assets at any given moment. Any asset or trading position may be subject to large swings in value and may even become worthless. You should have deep expertise in trading crypto assets. Moreover, the User shall bear any loss resulted in his/her own fault or error. The risk of loss in trading or holding crypto assets can be substantial. Therefore, you should carefully consider whether trading or holding crypto assets is suitable for you considering your financial condition."

g.    "If you supply assets for lending, you understand and accept that you might not be able to withdraw a crypto-asset for an indefinite period of time in case it is borrowed by another user, you acknowledge that you understand the decentralized nature of the Protocol and therefore we do not have the control over users' actions or non-actions and we cannot be held liable for any of those. You accept the risk of borrowers' default in the case of a non-liquidation event. Furthermore, we do not guarantee the impossibility of any default, including the default of the Protocol in cases, including but not limited, to the loss of trading liquidity, market sentiments, actions or non-actions by other protocol users."

h.    "Any dispute, controversy, or claim arising out of or in relation to these Terms, including the validity, invalidity, breach, or termination thereof, shall be settled by

arbitration in accordance with the Federation Rules of International Arbitration of the Federation Chambers of Commerce . . . . The seat of the arbitration shall be Victoria, the Republic of Seychelles."

i.      "These Terms shall exclusively be governed by and construed in accordance with the substantive laws of the Republic of Seychelles."

19.     According to the Complaint, Alameda invested approximately $80 million worth of stablecoins USDT and USDC in Vires in three separate transactions on March 5, March 11, and March 12, 2022. (*Id.* ¶ 30.) Between March 19 and April 1, 2022, Alameda borrowed 630,000 WAVES (worth approximately $22 million at the time) and used the $80 million worth of stablecoins deposited on Vires as collateral. (*Id.* ¶ 31.)

20.     During and shortly after Alameda made its investments, the price of WAVES began to drop, and USDN briefly depegged from the U.S. dollar before rebounding a few days later. (*Id.* ¶ 37.) On April 3, 2022, Mr. Ivanov informed the public that Alameda played a significant role in the market disruption affecting the Waves ecosystem. (*Id.* ¶ 38.) As Mr. Ivanov explained, Alameda manipulated the price of WAVES by secretly betting against WAVES and then creating a "fear, uncertainty, and doubt" campaign to trigger panic selling. (*Id.*) On April 8, 2022, just days after Mr. Ivanov publicly called out Alameda, Alameda purchased approximately 634,000 WAVES, repaid its outstanding loan to Waves (including accumulated interest), and never made another investment on Vires. (*Id.* ¶ 47.)

21.     Pursuant to a governance proposal that was passed by the Vires DAO in August 2022, which gave Vires users with USDT and USDC the option to exchange their positions for USDN with a 5% liquidation bonus or keep their positions, Alameda chose to convert its USDT and USDC positions into USDN and received approximately 95.6 million USDN. (*Id.* ¶ 52.)  After

it was able to withdraw and/or convert some of that USDN, Alameda alleges that it has a claim against Mr. Ivanov to receive approximately 90.4 million USDN (*id.* ¶ 53), despite the fact that Alameda still has access to its Waves account today.

22.     After reports of financial weakness and allegations of criminal activity by Debtors' management, Alameda and related entities declared bankruptcy on November 11, 2022 and November 14, 2022. (*Id.* ¶ 59.)

23.     Alameda commenced this Adversary Proceeding on November 10, 2024 (two years after it filed for bankruptcy), alleging that Mr. Ivanov locked the collateral it deposited on Vires and demanding return of the collateral. (*Id.* ¶¶ 70-72.) Alameda also claims that Mr. Ivanov violated the automatic stay (*id.* ¶¶ 73-77) and seeks damages for conversion and fraud under the common law of the British Virgin Islands (*id.* ¶¶ 78-85), although it is unclear why Alameda asserts that BVI law applies to Alameda's transactions on Vires.

24.     After Mr. Ivanov engaged McDermott Will & Emery to represent him in this Adversary Proceeding, his counsel and counsel for Alameda discussed a proposed case management order, including the schedule for the forthcoming Motion to Dismiss. After counsel for Mr. Ivanov indicated that Mr. Ivanov intended to move to dismiss based on lack of personal jurisdiction, counsel for Alameda would not agree to a schedule that would postpone discovery until resolution of the Motion to Dismiss. Counsel for Alameda also would not share any information as to the theory of personal jurisdiction over Mr. Ivanov. Rather, the parties could only agree to a briefing schedule for this Motion to Stay.

25.     Mr. Ivanov therefore has filed this Motion to Stay on an expedited timeline and expects to file the Motion to Dismiss based on lack of personal jurisdiction and other potential grounds in approximately two weeks. Because Alameda—a BVI company—has sued an

individual residing in the UAE for transactions on a decentralized crypto liquidity pool that required guarantees that its users were not U.S. residents or entities and has put forward no factual allegations to support the exercise of personal jurisdiction over Mr. Ivanov, Mr. Ivanov submits that he is likely to prevail on his Motion to Dismiss. A limited stay is therefore warranted to avoid unnecessary discovery until the Court has the opportunity to evaluate the basis for jurisdiction over Mr. Ivanov in this Adversary Proceeding.

## ARGUMENT

26.     Rule 26 of the Federal Rules of Civil Procedure ("FRCP") "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (citing FRCP 26(b)-(d)). The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Allowing the court to resolve dispositive threshold issues before the parties spend considerable resources on discovery is a sound exercise of the Court's discretion because it fosters the "just, speedy, and inexpensive determination" of the action as required by FRCP 1. It is therefore well within the Court's "sound discretion" to stay discovery under the circumstances presented here. *See Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (finding no abuse of discretion in district court's decision to stay discovery because "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile"); *Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (affirming Magistrate Judge decision to stay discovery pending review of the motions to dismiss the complaint); *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979) ("It is within the sound discretion of the Court to postpone discovery of issues relating to the merits of a case pending resolution of potentially dispositive motions.").

27.      Courts in this Circuit typically consider four factors in determining whether to grant a motion to stay discovery: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Fernsler v. Swatara Twp. Police Dep't*, No. 1:24-CV-1253, 2024 WL 4372307, at *1 (M.D. Pa. Oct. 2, 2024) (internal quotation marks and citations omitted); *see also Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. CV 14-1192-LPS-CJB, 2015 WL 1737476, at *1 (D. Del. Apr. 9, 2015) (assessing the following three factors: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage"). The stay "test merely provides general guidance; it is not a rigid template for decision. Rather, district courts retain the discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 5517283, at *5 (D. Del. Sept. 11, 2020) (quotation marks and citation omitted). "[U]ltimately the Court must decide stay requests on a case-by-case basis, and whether a stay should be granted turns in each case on the totality of the circumstances." *Id.* (quotation marks and citation omitted).

28.      As described in greater detail below, each of these factors and the totality of the circumstances weigh decisively in favor of granting a stay pending adjudication of the Motion to Dismiss.

I.      **Mr. Ivanov's Forthcoming Motion to Dismiss Will Be Dispositive of the Entire Adversary Proceeding Against Him.**

29.     The filing of a dispositive motion that would completely dispose of, or significantly narrow, a case weighs in favor of staying proceedings pending a decision on the motion. *See Baquero v. Mendoza*, No. CV1815081KMMAH, 2019 WL 13250988, at *2 n.2 (D.N.J. Mar. 13, 2019) ("A stay would simplify issues for discovery because a ruling on the pending motion to dismiss may streamline the scope of discovery."); *Pfizer Inc. v. Johnson & Johnson*, No. 17-cv-4180, 2018 WL 1071932, at *1 (E.D. Pa. Feb. 27, 2018) (finding that this factor "will generally lean in favor of staying discovery" where "the [motion to dismiss] does have the potential to dispose of the entire case and eliminate the need for discovery").

30.     A court need only find that the forthcoming Motion to Dismiss "do[es] not appear to be without foundation in law" to find that this factor weighs in favor of a stay. *Moore v. Mann*, No. 3:CV-13-2771, 2015 WL 672444, at *1 (M.D. Pa. Feb. 17, 2015) (internal quotation marks and citations omitted) (alteration in original); *see also Actelion Pharm. Ltd. v. Apotex Inc.*, No. 12-5743(NHL/AMD), 2013 WL 5524078, at *5 (D.N.J. Sept. 6, 2013) (rejecting argument that the applicable standard requires the moving party "to demonstrate a 'clear and unmistakable' likelihood of success on its potentially dispositive motion"). Here, granting the forthcoming Motion to Dismiss based on lack of personal jurisdiction under Rule 12(b)(2) would of course dispose of all the issues in the case against Mr. Ivanov, making discovery entirely unnecessary.

31.     Moreover, given the lack of any alleged connection between this Adversary Proceeding and the United States, which is the relevant forum for purposes of personal jurisdiction in bankruptcy cases, *see Alameda Rsch. Ltd. v. Platform Life Scis. Inc.*, No. AP 23-50444 (JTD), 2023 WL 8814216, at *1 (Bankr. D. Del. Dec. 20, 2023), Mr. Ivanov's forthcoming Motion to Dismiss is far stronger than simply having a foundation in law. As this Court previously

recognized, the inquiry into the due process requirements of personal jurisdiction under the Fourteenth Amendment is guided by the "minimum contacts" test established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *Alameda Rsch. Ltd.*, 2023 WL 8814216, at *1. "Under this standard, a plaintiff must show that a nonresident defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316); *see Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296. Given Mr. Ivanov's lack of any continuous or systematic contacts with the United States, Alameda will need to establish specific jurisdiction over him, which "arises when the particular cause of action arose from Defendant's activities within the forum state." *Gurmessa v. Genocide Prevention in Eth., Inc.*, No. CV 21-869-RGA, 2022 WL 608924, at *2 (D. Del. Feb. 23, 2022).

32.     As discussed above, given the complete lack of any connection between and among Mr. Ivanov in the UAE, Alameda in the Bahamas and BVI, the Vires transactions at issue that took place on a decentralized protocol governed by Seychelles law, and the United States, Mr. Ivanov has a strong basis for asserting that the entirety of the Adversary Proceeding must be dismissed for lack of personal jurisdiction. While Mr. Ivanov recognizes that Alameda is not required to set forth in the Complaint the grounds upon which the court has personal jurisdiction over Mr. Ivanov and only bears that burden once a defendant has raised a jurisdictional defense, *Alameda Rsch. Ltd.*, 2023 WL 8814216, at *1 (quoting *Gurmessa*, 2022 WL 608924, at *1), Mr. Ivanov respectfully

submits that under these circumstances he should not be required to submit to discovery until Alameda has established a sufficient basis for the Court to exercise personal jurisdiction over him.

33.     Finally, Mr. Ivanov contends that if this Adversary Proceeding is dismissed for lack of personal jurisdiction, there is no alternate forum in the United States that has jurisdiction over him, and thus there is nowhere in the United States in which Alameda could refile its Complaint. If there is anywhere that Alameda can refile, it would necessarily be in a foreign country that for a host of reasons may not allow the case to proceed at all or may substantially limit the discovery that would otherwise be available in a U.S. court. Thus, it is not the case that any merits discovery obtained in this Adversary Proceeding will also be useful in another U.S. court in which Alameda may attempt to refile the Complaint. *Cf. Eagle Pharms., Inc. v. MRIGlobal*, No. 21-CV-20145-ES-LDW, 2022 WL 18621010, at *2 (D.N.J. Aug. 9, 2022) (finding that "Plaintiff's claims will proceed in this venue or another, and the merits discovery taken here can be used in whatever venue the case ultimately may be adjudicated"). This factor therefore squarely favors a stay of this Adversary Proceeding.

**II.     This Adversary Proceeding Is in Its Earliest Stages, and Neither the Court nor the Parties Have Expended Significant Resources on This Case.**

34.     The status of this Adversary Proceeding also favors granting a short stay of discovery while the Court considers Mr. Ivanov's forthcoming Motion to Dismiss. Where "the Court and the parties hav[e] invested relatively few resources in the cases since their filing, this factor strongly favors a stay." *Bataan Licensing LLC v. DentalEZ, Inc.*, No. 22-CV-238, 2023 WL 143991, at *2 (D. Del. Jan. 10, 2023).

35.     That is the case here. As in *Bataan Licensing*, "this case is in its very early stages." *Id.* The parties have filed a proposed CMO and Mr. Ivanov will file the Motion to Dismiss in approximately two weeks, but there have been no further developments in this Adversary

Proceeding. The parties have not exchanged initial disclosures or any discovery requests. *See id.* (finding a stay appropriate where "[d]iscovery is in its infancy, with the parties having only [recently] exchanged their initial disclosures"). And the trial date remains to be set as the parties specified no trial date in the CMO. This factor strongly favors granting a short stay pending the outcome of the Motion to Dismiss. *See Fernsler*, 2024 WL 4372307, at *2 ("[A] stay is appropriate because[] . . . discovery [has] not yet begun at this early stage . . . ."); *Eye Care Ctr. of N.J., P.A. v. Twin City Fire Ins. Co.*, No. 20-CV-05743-KM-ESK, 2020 WL 7227186, at *2 (D.N.J. Nov. 20, 2020) (finding that this factor favored a stay because "discovery has not commenced, and a trial date has not been set").

### III.   Alameda Will Not Be Unduly Prejudiced by a Temporary Stay of Discovery.

36.     The third and fourth factors regarding the prejudice to the non-moving party and hardship on the moving party also weigh heavily in favor of a stay.  As an initial matter, a short stay of discovery while the Court considers the Motion to Dismiss will not prejudice the Debtors. "[T]hat a stay may delay resolution of the litigation . . . alone does not warrant a finding that [the plaintiff] will be unduly prejudiced." *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010). Mr. Ivanov has been advised by counsel of his obligation to preserve all information and documents relevant to this Adversary Proceeding, and Plaintiff is not able to point to any danger that any discovery will not be available after the stay is lifted.

37.     Further, the purported purpose of this Adversary Proceeding is to recover estate assets to distribute to creditors. The Court confirmed the Debtors' *Second Amended Joint Chapter 11 Plan of Reorganization* (the "Plan") on October 8, 2024 [D.I. 26404], a month before this Adversary Proceeding was filed. The Plan contemplates full payment of customer and general unsecured claims plus interest for the time that creditor assets remained locked with the various

Debtor entities.[5] And as of January 3, 2025, Debtors have already begun distributing payments to creditors.

38.     Mr. Ivanov expects that in opposition to this Motion to Stay, Alameda is likely to emphasize its inherent interest in swift resolution of this Adversary Proceeding. *See, e.g.*, *Eagle Pharms.*, 2022 WL 18621010, at *1. But that concern simply is not present here, where creditors already stand to recover *more* than the Petition Date value of their claims, and Debtors have already begun distributing estate assets to creditors. A brief stay of discovery in this litigation will have little to no impact on the timing of distributions or creditor recovery.

### IV.     Mr. Ivanov Will Experience Significant Hardship If Forced to Participate in Discovery in an Adversary Proceeding in Which the Court Lacks Jurisdiction.

39.     Finally, Mr. Ivanov will experience significant hardship if he is forced to participate in discovery at this stage. It is appropriate for the Court to consider the costs associated with discovery when weighing this factor. *See Eye Care of N.J.*, 2020 WL 7227186, at *2 (finding that "it would be prejudicial to defendant to engage in expensive and time-consuming discovery while its [motions to dismiss] are pending"). While Debtors are able to cover the millions in legal expenses for litigation aimed at asset recovery out of their multibillion-dollar estate, Mr. Ivanov is a foreign individual who resides halfway around the world and has had extremely limited contact with the United States.

40.     Forcing Mr. Ivanov to spend considerable funds collecting, processing, and producing documents and responding to written discovery requests in a foreign country (and potentially sitting for a deposition), all while having strong arguments that this Court lacks jurisdiction over him, is patently unfair. *See Jones v. Mirza*, No. CV 15-1017-RGA, 2016 WL

---

[5]     Disclosure Statement at 2 ("Debtors currently forecast that customers and digital asset loan creditors will recover between 119% and 143% of their Petition Date claim values.").

4203814, at *4 (D. Del. Aug. 8, 2016) (staying discovery because the court was not at that time "able to evaluate whether it has jurisdiction over this action"); *Sea Eagle Ford, LLC v. Texas Quality Well Serv., LLC*, No. 17-CV-02141-KMT, 2017 WL 11635035, at *2 (D. Colo. Nov. 16, 2017) (finding that the plaintiff's "interest in proceeding expeditiously with this case" was "overcome by the burden [the defendant] might face if it were forced to proceed with discovery only to have the case dismissed for lack of jurisdiction"); *Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, No. 2:13-CV-1261, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) ("Staying merits discovery is consistent with the Court's pronouncement . . . that discovery must not undermine the due process considerations that personal jurisdiction is designed to protect." (quotation marks omitted)); *In re Copper Tubing Litig.*, No. 04-2771 DV, 2006 WL 8434911, at *4 (W.D. Tenn. Oct. 3, 2006) ("If the defendants who are challenging the court's jurisdiction prevail on their Rule 12(b)(2) motions, it would be unfair to put them in the position of disclosing records of their business practices and putting them to the burden and expense of engaging in costly merit discovery. It would be a better practice to dispose of the personal jurisdiction motions before putting the foreign defendants to the expense of discovery in this action."). Indeed, Alameda's insistence in proceeding with potentially unnecessary discovery appears to be a litigation tactic to leverage its outsized financial resources in order to force Mr. Ivanov to choose between settling meritless claims and defending himself while incurring costly legal expenses for both motion practice and discovery. It is this hardship on Mr. Ivanov, which is particularly unique to an individual defendant, and the lack of prejudice to Alameda that make this factor weigh so strongly in favor of a stay.

41.     At bottom, all of the factors considered by courts in determining motions to stay weigh in favor of a limited stay of discovery pending the determination of Mr. Ivanov's

forthcoming Motion to Dismiss and the question of the Court's jurisdiction over him. This Adversary Proceeding is still at the pleadings stage, and the requested stay will ensure that if discovery proceeds as to Mr. Ivanov, it does so only if he remains a party and is properly before the Court. As such, the lack of any prejudice to Plaintiff coupled with the potentially unnecessary severe burden and expense on Mr. Ivanov strongly supports a stay of discovery.

### CERTIFICATION UNDER FRCP 37(a)(1) AND LOCAL RULE 7026-1(d)

42.     The undersigned Delaware counsel hereby certifies that, pursuant to FRCP 37(a)(1) and Local Rule 7026-1(d), counsel for Mr. Ivanov has made a reasonable effort to reach agreement with Plaintiff on the matters set forth in this motion.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

43.    For the foregoing reasons, Mr. Ivanov respectfully requests that this Court enter an

order staying all discovery in this Adversary Proceeding until the Court decides Mr. Ivanov's

forthcoming Motion to Dismiss.

Dated: January 7, 2025
      Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
E-mail: dhurst@mwe.com

- and -

Joseph B. Evans (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: jbevans@mwe.com
      dazman@mwe.com

- and -

Sagar K. Ravi (admitted *pro hac vice*)
The McDermott Building
500 North Capital Street, NW
Washington, DC 20001
Telephone: (202) 756-8043
E-mail: sravi@mwe.com

*Counsel for Defendant Aleksandr "Sasha" Ivanov*

## CERTIFICATE OF SERVICE

I, David R. Hurst, hereby certify that, on January 7, 2025, I caused one copy of the foregoing *Defendant Aleksandr "Sasha" Ivanov's Motion to Stay Discovery Pending Motion to Dismiss* to be served upon (i) all parties of record via CM/ECF; and (ii) parties listed below via electronic mail, unless otherwise indicated.

Dated: January 7, 2025

/s/ David R. Hurst
David R. Hurst (I.D. No. 3743)

**LANDIS RATH & COBB LLP**

Adam G. Landis (I.D. No. 3407)
Matthew B. McGuire (I.D. No. 4366)
Kimberly A. Brown (I.D. No. 5138)
Matthew R. Pierce (I.D. No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
    mcguire@lrclaw.com
    brown@lrclaw.com
    pierce@lrclaw.com

*Counsel for Plaintiff*

**SULLIVAN & CROMWELL LLP**

Stephanie G. Wheeler (admitted *pro hac vice*)
Stephen Ehrenberg (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
    ehrenbergs@sullcrom.com
    gluecksteinb@sullcrom.com
    dunnec@sullcrom.com
    crokej@sullcrom.com