## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD., | |
| Plaintiff, | |
| -against- | |
| | Adv. Pro. No. 24-50221 (JTD) |
| ALEKSANDR "SASHA" IVANOV, NUMERIS LTD., DLTECH LTD., and JOHN DOES 1-20, | |
| Defendants. | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT ALEKSANDR "SASHA" IVANOV'S MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

## <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ...................................................................................................2

LEGAL STANDARD...................................................................................................................4

ARGUMENT ...............................................................................................................................5

      I.      A Discovery Stay Will Not Simplify the Issues for Trial. .......................................5

      II.     The Status of This Action and the Chapter 11 Proceedings Weighs Heavily Against Staying Discovery. ......................................................................7

      III.    A Discovery Stay Would Unduly Prejudice Plaintiff. ...........................................9

      IV.   Plaintiff Intends to Seek Jurisdictional Discovery..................................................11

CONCLUSION...........................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alameda Rsch. Ltd.* v. *Kives*,
   2024 WL 717771 (Bankr. D. Del. Feb. 21, 2024) .................................................................4

*Alibaba Grp. Holding Ltd.* v. *Alibabacoin Found.*,
   No. 18-cv-2897 (S.D.N.Y. Oct. 22, 2018) ...........................................................................11

*APWU* v. *Potter*,
   343 F.3d 619 (2d Cir. 2003)................................................................................................11

*Bridgestone Ams., Inc.* v. *Int'l Bus. Machs. Corp.*,
   2016 WL 11786196 (M.D. Tenn. July 6, 2016) ...................................................................11

*Burger King Corp.* v. *Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................7

*Celotex Corp.* v. *Edwards*,
   514 U.S. 300 (1995)............................................................................................................10

*Cipla USA, Inc.* v. *Ipsen Biopharmaceuticals, Inc.*,
   2022 WL 3139096 (D. Del. Aug. 5, 2022) .................................................................. *passim*

*Compagnie Des Bauxites de Guinee* v. *L'Union Atlantique S.A. d'Assurances*,
   723 F.2d 357 (3d Cir. 1983)................................................................................................12

*Cooper Notification, Inc.* v. *Twitter, Inc.*,
   2010 WL 5149351 (D. Del. Dec. 13, 2010)...........................................................................8

*Costantino* v. *City of Atlantic City*,
   2015 WL 668161 (D.N.J. Feb. 17, 2015) ............................................................................10

*Eurofins Pharma US Holdings* v. *BioAlliance Pharma SA*,
   623 F.3d 147 (3d Cir. 2010)................................................................................................12

*Galarza* v. *Whittle-Kinard*,
   2017 WL 2198182 (D.N.J. May 18, 2017) ............................................................................4

*ImageVision.Net, Inc.* v. *Internet Payment Exch., Inc.*,
   2013 WL 1743854 (D. Del. Apr. 22, 2013)............................................................................8

*Kaavo Inc.* v. *Cognizant Tech. Sols. Corp.*,
   2015 WL 1737476 (D. Del. Apr. 9, 2015)..................................................................5, 6, 11

*Petro* v. *FCA US LLC*,
    2023 WL 6510741 (D. Del. July 31, 2023) ...............................................................5, 6

*Rogers* v. *Experian Information Sols., Inc.*,
    2024 WL 894857 (D. Del. Mar. 1, 2024) ...............................................................5, 9

*SoftView LLC* v. *Apple Inc.*,
    2012 WL 3061027 (D. Del. July 26, 2012) ...............................................................7, 8

*Standard Chlorine of Del., Inc.* v. *Sinibaldi*,
    821 F. Supp. 232 (D. Del. 1992) ...............................................................11

*Taylor* v. *Winnecour*,
    2013 WL 136499 (W.D. Pa. Jan. 10, 2013), *aff'd sub nom. In re Taylor*, 519
    F. App'x 108 (3d Cir. 2013) ...............................................................7, 9

*Udeen* v. *Subaru of Am., Inc.*,
    378 F. Supp. 3d 330 (D.N.J. 2019) ...............................................................7, 8

*Univar, Inc.* v. *Geisenberger*,
    409 F. Supp. 3d 273 (D. Del. 2019) ...............................................................4

*Wilson* v. *Lohman*,
    2007 WL 205026 (D. Del. July 17, 2007) ...............................................................6

*World-Wide Volkswagen Corp.* v. *Woodson*,
    444 U.S. 286 (1980) ...............................................................7

## Other Authority

Fed. R. Bankr. P. 1001 ...............................................................10

Plaintiff Alameda Research Ltd. ("Plaintiff") respectfully submits this opposition (this "Opposition") to the Motion to Stay Discovery Pending Motion to Dismiss [Adv. D.I. 8] (the "Motion" or "Mot.") filed by Defendant Aleksandr "Sasha" Ivanov ("Defendant" and, together with Plaintiff, the "Parties") on January 7, 2025, in the above-captioned adversary proceeding (the "Adversary Proceeding").  In support of this Opposition, Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT

Defendant's motion to stay discovery is just another act in a series of actions taken by Defendant to delay returning property that rightfully belongs to Plaintiff and/or its affiliated debtors and debtors-in-possession (each, a "Debtor" and collectively the "Debtors").  As detailed in the Complaint, [Adv. D.I. 1] (the "Complaint" or "Compl."),[2] Defendant is the founder and owner of a blockchain ecosystem, Waves Tech ("Waves"), including a decentralized cryptocurrency exchange, the Waves Exchange, the cryptocurrency token WAVES, and a liquidity platform and online exchange, Vires, which ran exclusively on the Waves blockchain.  (Compl. ¶¶ 3-4.)  In March 2022, Plaintiff deposited approximately $80 million in USD Coin ("USDC") and Tether ("USDT") stablecoins on Vires, an online exchange accessible at http://vires.finance. (Compl. ¶ 5.)  When Debtors filed for bankruptcy in this court in November 2022, Defendant made a public announcement targeting the FTX Chapter 11 proceeding in the United States through the web publishing platform *Medium,* acknowledging that Plaintiff had assets on Vires.  He further initiated and ultimately passed a "governance proposal" freezing Plaintiff's funds on the Vires liquidity platform within the Waves blockchain, both of which remain solely in his control. (Compl. ¶ 9.)

---

[2] In an effort to minimize estate resources expended on responding to this Motion, Plaintiff incorporates the facts in the Complaint by reference and provides only a brief summary here for the Court's convenience.  Capitalized terms not defined herein shall have the same meaning attributed to them in the Complaint. [Adv. D.I. 1.].

For over two years since the Chapter 11 proceeding was initiated, Defendant has gone to great lengths to avoid returning the Debtors' assets that he froze on the Vires platform in violation of the automatic stay.  (Compl. ¶¶ 8, 10.)  Defendant has been dodging the Debtors since December 22, 2022, steadfastly refusing to respond to repeated attempts to contact him.  (Compl. ¶ 10.)  Contrary to Defendant's assertions (Mot. ¶ 3), Plaintiff still does not have access to its own account on the platform operated and controlled by Defendant.  (Compl. ¶ 62.)  Because Defendant continues to avoid any engagement with Debtors and refuses to enable Plaintiff to access its Vires account, Plaintiff has been forced to invest significant time and resources initiating and prosecuting this Adversary Proceeding.  Defendant now seeks, again, to hinder the return of Debtors' assets by delaying and frustrating Plaintiff's ability to prosecute this action.

Defendant suggests that he is entitled to a stay of discovery because he intends to move this court to dismiss the action based on a purported lack of personal jurisdiction.  But Defendant ignores the fact that his motion to dismiss will necessarily present complex, fact-intensive issues that themselves will require jurisdictional discovery.  A stay of discovery is inappropriate under these circumstances because it is inefficient given the time and resources expended to date and will prejudice Plaintiff in the broader bankruptcy proceeding.

## **RELEVANT BACKGROUND**

Defendant is the owner and founder of a blockchain ecosystem called Waves Tech. (Compl. ¶ 3.)  The Waves ecosystem included a decentralized cryptocurrency exchange—the Waves Exchange—and its own native cryptocurrency token, WAVES, that could be traded on the exchange and elsewhere.  (*Id.*)  Waves users could transfer their assets from Waves to Vires, a liquidity platform and lending protocol that ran exclusively on the Waves blockchain.  (Compl. ¶ 4.)  Vires users could act as both lenders and borrowers on the Waves blockchain.  Users could deposit digital assets via the Waves blockchain onto Vires to earn interest, as well as governance

rights in the Vires decentralized autonomous organization ("Vires DAO"), which had the ability to enact governance proposals that would affect the Vires protocol. *Id.*

Between February and March of 2022, Defendant engaged in a fraudulent scheme via the Waves platform that had the effect of siphoning funds from Vires and artificially inflating the value of WAVES, causing it to lose over 95% of its value and Vires users to suffer $530 million in losses. (Compl. ¶ 6.) In an attempt to cover up his fraud, Defendant took to the social media platform X (formerly Twitter) on April 3, 2022, to publicly blame Plaintiff for destabilizing WAVES and the Waves ecosystem, including Vires, stating: "Get your popcorn ready: @AlamedaResearch manipulates $waves price and organizes FUD [Fear, Uncertainty, and Doubt] campaigns to trigger panic selling."[3] (Compl. ¶¶ 7-8.)

When Debtors filed for bankruptcy in November 2022, Defendant, of his own volition and because he "fe[lt] it was necessary," published a "statement" on the publishing platform *Medium* on November 14, 2022, acknowledging that "Alameda Research currently has $90,359,718.855452 held in the USDN vesting contract on Vires Finance awaiting repayment" and noting that "[t]his puts the Vires Finance team in a peculiar position; these vested funds may actually be FTX user funds."[4] He went on to "propose to block the vesting of the Alameda account until such a time as the incoming liquidators are in contact with us, and guarantees can be made that the USDN will go to repaying FTX users affected by this insolvency."[5]

---

[3] Sasha.waves (@sasha35625), X (Apr. 3, 2022, 8:08 AM),
https://x.com/sasha35625/status/1510589946926673920?lang=en.

[4] Waves Tech, *Waves Founder, Sasha Ivanov Statement on Alameda Insolvency*, MEDIUM (Nov. 14, 2022),
https://medium.com/wavesprotocol/waves-founder-sasha-ivanov-statement-on-alameda-insolvency-ba17225d2675.

[5] *Id.*

Following the Petition Date, Defendant continued wrongly to withhold Plaintiff's assets on Vires, and other than one fruitless call with the Debtors in January 2023, failed to respond to all outreach from the Debtors and failed to cooperate in returning Plaintiff's assets. (Compl. ¶ 10.) After nearly two years of unsuccessful outreach, Plaintiff had no choice but to file this Adversary Proceeding on November 10, 2024, seeking (i) the turnover of assets deposited by Plaintiff onto Vires or the value of those assets, (ii) damages for Defendant's flagrant violations of the automatic stay, (iii) damages for Defendant's conversion of Debtor property, and (iv) damages for fraud in connection with Defendant's actions. (Compl. ¶ 12.)

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Alameda Rsch. Ltd.* v. *Kives*, 2024 WL 717771, at *1 (Bankr. D. Del. Feb. 21, 2024) (Dorsey, J.) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936)). But "[a] stay is an extraordinary measure." *Univar, Inc.* v. *Geisenberger*, 409 F. Supp. 3d 273, 284 (D. Del. 2019), and courts generally do not favor granting motions to stay. *Galarza* v. *Whittle-Kinard*, 2017 WL 2198182, at *1 (D.N.J. May 18, 2017).

Federal courts in Delaware weigh three factors in deciding motions to stay discovery:  "(1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Cipla USA, Inc.* v. *Ipsen Biopharmaceuticals, Inc.*, 2022 WL 3139096, at *1 (D. Del. Aug. 5, 2022).[6] "The movant bears the burden to show that the circumstances

---

[6] Defendant applies a different test that includes an additional factor, "whether denial of the stay would create a clear case of hardship or inequity for the moving party," citing a case from the Middle District of Pennsylvania. (Mot.

support an exercise of the court's discretion to stay." *Id.* Courts "do[] not 'evaluate the legal merits of the proceeding or inquiry that the movant seeks a stay in favor of.'" *Petro* v. *FCA US LLC*, 2023 WL 6510741, at *1 (D. Del. July 31, 2023) (citing *Kaavo Inc.* v. *Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *2 n.4 (D. Del. Apr. 9, 2015)). Nor do courts consider the economic burden of discovery on the movant as part of the analysis. *See Kaavo Inc.*, 2015 WL 1737476, at *4 n.10 (holding that added litigation costs are not "the kind of 'undue' hardship or inequity referenced in the case law").

## ARGUMENT

### I.    A Discovery Stay Will Not Simplify the Issues for Trial.

Defendant fails to show that a stay "will simplify the issues for trial." *Rogers* v. *Experian Information Sols., Inc.*, 2024 WL 894857, at *1 (D. Del. Mar. 1, 2024). When evaluating this factor, "courts assess *all possible* outcomes, not just the potential outcome most favorable to the party seeking the stay." *Id.* (emphasis added) (citing, *inter alia*, *Kaavo Inc.*, 2015 WL 1737476, at *2). Defendant does precisely the opposite, focusing *only* on the outcome most favorable to him. (Mot. ¶ 29.) This is not the law in this district. Defendant fails to consider or analyze other potential outcomes, including denial of the motion altogether or denial in part. Where an underlying motion could dispose of a case if granted in full, courts in this district have taken the approach that the factor is weighed neutrally as a whole—because if the motion were denied, there could be no efficiency gains. *See Rogers*, 2024 WL 894857, at *1. Here, Defendant agrees that if the motion to dismiss is denied in its entirety, it "will not significantly simplify the issues in the case." (Mot. ¶ 9.) Moreover, Plaintiff intends to ask this court for jurisdictional discovery in

---

¶ 27.) Plaintiff has not identified any cases within the District of Delaware that consider this factor when deciding motions to stay discovery.

connection with its opposition to Defendant's forthcoming motion to dismiss. Should the court grant limited jurisdictional discovery—another possible outcome on the motion—it would be more efficient to conduct jurisdictional and merits discovery simultaneously, which further undermines Defendant's position.

Importantly, courts in this district do not "predict the likely outcome of the motion[] to dismiss" in deciding a motion to stay discovery.[7] *Kaavo Inc.*, 2015 WL 1737476, at *2 n.4; *see also Cipla USA, Inc.*, 2022 WL 3139096, at *2 ("Consideration of the first factor on a motion to stay should not entail an evaluation of the legal merits of the motion to dismiss."); *Petro*, 2023 WL 6510741, at *1 (declining to evaluate the underlying motion to dismiss when considering the defendant's motion to stay discovery). Moreover, in this Chapter 11 proceeding, this Court has declined to consider the merits of an underlying motion which has not yet been fully briefed when considering a motion to stay discovery. [D.I. 4019 at 96:6-10.]

But even if this Court did consider the merits of the forthcoming motion to dismiss (and it should not), it is not at all clear, as Defendant suggests, that Defendant "is likely to prevail on his Motion to Dismiss." (Mot. ¶ 25.) Defendant has numerous connections to the United States that, taken in the aggregate, are sufficient to confer personal jurisdiction over Defendant, or, at the very least, form the basis for Plaintiff's anticipated request for jurisdictional discovery. Defendant has repeatedly and deliberately engaged with the United States in his operation of the Waves ecosystem, his contacts with the Debtors, and his resulting interference with the Debtors' U.S.

---

[7] Defendant's assertion that his anticipated motion to dismiss will satisfy the issue-simplification factor so long as that motion "does not appear to be without foundation in law" similarly misstates the law. The District of Delaware has consistently declined to examine the merits of the underlying motion for which the movant seeks a discovery stay pending its resolution. *See, e.g., Wilson* v. *Lohman*, 2007 WL 2050256, at *2 (D. Del. July 17, 2007) (granting a motion to stay discovery but without looking to the legal merits of the defendants' motion to dismiss and for summary judgment). It is therefore unsurprising that Defendant fails to identify a single instance in which this Court or the District of Delaware has applied the "without foundation in law" standard to a motion to stay discovery.

Bankruptcy, and he cannot claim that he did not reasonably anticipate "being haled into" a U.S. court. *See World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 292 (1980); *see also Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (authorizing specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities") (citation omitted). Plaintiff does not intend to consume the Court's time briefing the facts establishing personal jurisdiction over Defendant on this Motion but will be prepared to address them at the hearing should the Court wish to do so.

## II.    The Status of This Action and the Chapter 11 Proceedings Weighs Heavily Against Staying Discovery.

The second factor courts consider in deciding motions to stay, the status of the litigation, further weighs against a stay of discovery.  For a case that occurs in the context of a bankruptcy proceeding, the status of the litigation should take into account both the status of the adversary proceeding and the status of the broader bankruptcy proceeding.  *See Taylor* v. *Winnecour*, 2013 WL 136499, at *2 (W.D. Pa. Jan. 10, 2013), *aff'd sub nom. In re Taylor*, 519 F. App'x 108 (3d Cir. 2013) ("[T]his case (including the underlying bankruptcy proceeding) is already protracted.  At this stage in the litigation, the parties deserve prompt final resolution.").

Although this factor may sometimes include consideration of "whether discovery is complete and a trial date has been set," *Cipla USA, Inc.*, 2022 WL 3139096, at *1, "it is almost always the case that a trial date is not set before a motion to dismiss is decided."  *Udeen* v. *Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019).  "[T]he economies that might otherwise flow from granting a stay early in a case" can be negated when the parties have devoted "[s]ubstantial time and resources" to issues such as "scheduling and the resolution of discovery disputes, as well as . . . motions to sever, stay, and dismiss."  *SoftView LLC* v. *Apple Inc.*, 2012 WL 3061027, at *4

(D. Del. July 26, 2012).  That the litigation is in early stages does not necessarily tilt in favor of Defendant.  *See ImageVision.Net, Inc.* v. *Internet Payment Exch., Inc.*, 2013 WL 1743854, at *5 (D. Del. Apr. 22, 2013) ("While the formulaic language generally recited by judges in this district is 'whether discovery is complete and whether a trial date has been set,' . . . the rationale underlying this 'stage of litigation' factor does not demand such an inflexible approach.").  Courts often deny stays of discovery when cases are at earlier stages.  *See, e.g.*, *Udeen*, 378 F. Supp. at 333 ("The fact that the case is at an early stage and no trial date has been set is not a persuasive relevant factor to the Court's decision."); *Cooper Notification, Inc.* v. *Twitter, Inc.*, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (denying a stay when the parties had 11 months remaining for discovery and 20 months until trial); *SoftView LLC*, 2012 WL 3061027, at *4 (denying a stay when "[t]he Court ha[d] not set a trial date, the parties ha[d] taken only limited discovery, and the claim construction process ha[d] not yet begun").

As noted above, this action is the culmination of nearly two years of repeated attempts to resolve the matter with Defendant.  Plaintiff has invested significant time and resources since the day these Chapter 11 cases were filed in attempting to recover its funds.  Even more, Plaintiff has invested considerable time in preparing for this litigation.  Discovery materials are to be exchanged beginning January 27, 2025.  Plaintiff has been actively engaged in reviewing documents and identifying discoverable information and material, drafting initial disclosures, interrogatories, and document requests, and gathering its own documents to prepare for production. Plaintiff has undertaken extensive efforts to develop and run search terms over a database of over 40 million documents to identify the population of documents that are relevant to this adversary proceeding.  Given these efforts, there is no reason to delay the prosecution of this action pending the motion to dismiss, which will not be fully briefed for more than three months.

Defendant also fails to consider that this action is part of a larger bankruptcy proceeding that has been ongoing since November 2022 and that has reached an advanced stage. This Court confirmed the Debtors' *Second Amended Joint Chapter 11 Plan of Reorganization* (the "Plan") on October 8, 2024 [D.I. 26404], and the Plan became effective on January 3, 2025. [D.I. 29127.] *See, e.g.*, *Taylor* v. *Winnecour*, 2013 WL 136499, at *2 (W.D. Pa. Jan. 10, 2013) (considering the stage of the underlying bankruptcy proceeding in evaluating a motion to stay). The Debtors invested significant resources in plan confirmation, and distributions to creditors will begin shortly, despite Defendant's repeated attempts to hinder and delay the return of Plaintiff's assets to creditors.[8]  This Court should not reward Defendant's evasion tactics—Debtors' confirmed Plan does not grant him the ability to hold on to Debtors' assets indefinitely. Now is the time to return Debtors' assets, which should, in fairness, be distributed to creditors.

Moreover, in pointing out that certain creditors will be paid in distributions equal to the entire amount of their claims, plus post-petition interest, Defendant glosses over the fact that not all creditors will receive full recovery and that distributions are predicated on the successful recovery of additional estate assets through adversary proceedings. The estimated recovery is subject to the Debtors' ongoing analysis, the claims reconciliation and Know-Your-Customer process, prevailing market conditions, and a number of other assumptions, including the successful resolution of preference and avoidance actions. [D.I. 19143 at 25, 166.]

## III.    A Discovery Stay Would Unduly Prejudice Plaintiff.

Defendant fails to show that "a stay would [not] unduly prejudice or present a clear tactical disadvantage to" Plaintiff. *Rogers*, 2024 WL 894857, at *1. "[D]elay inherently harms a

---

[8] Defendant asserts that distributions to creditors began on January 3, 2025. While this was the date the Plan became effective, the first distributions have not yet commenced.

non-moving party by prolonging resolution of the dispute," *Cipla USA, Inc.*, 2022 WL 3139096, at *3, but especially so in bankruptcy proceedings where estate assets are at stake and the bankruptcy court is tasked with "secur[ing] the just, speedy, and inexpensive determination" of the proceedings.  Fed. R. Bankr. P. 1001; *see Celotex Corp.* v. *Edwards*, 514 U.S. 300, 308 (1995) (observing that Congress intended bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate").

Unnecessary delay of these actions would ultimately harm creditors because it would delay the recovery of estate assets and limit the preservation of evidence.  *See*, *e.g.*, *Costantino* v. *City of Atlantic City*, 2015 WL 668161, at *3 (D.N.J. Feb. 17, 2015) ("[A] stay would substantially delay plaintiff's efforts to 'diligently proceed to sustain [her] claim.' This substantially prejudices plaintiff.").

Given Defendant's actions over the past two years, it is clear that any further delay will severely prejudice Plaintiff.  Despite knowing that the ecosystem he controlled contained estate assets and that the Debtors had been attempting to contact him, Defendant took steps carefully designed to avoid the return of funds to the Debtors.  For instance, in 2023, well after the Petition Date and the Debtors' first efforts to speak with Defendant, he caused the dissolution of both Numeris Ltd. and DLTech Ltd.—the entities that operated Vires and Waves, respectively—even though he was on notice that the Debtors had been attempting to access their Vires account. (Compl. ¶¶ 62-63.)  This has already hampered the Debtors' recovery efforts and a discovery delay will further inhibit the preservation of relevant evidence.

Defendant claims that the expense of discovery while his motion is pending is a burden weighing in favor of a stay.  (Mot. ¶ 39.)  This is not so.  "This type of economic harm" that Defendant complains of "has been deemed not to amount to the kind of 'undue' hardship or

inequity referenced in the case law" of this Circuit. *Kaavo Inc.*, 2015 WL 1737476, at *4 n.10; *see also Standard Chlorine of Del., Inc.* v. *Sinibaldi*, 821 F. Supp. 232, 261 (D. Del. 1992) (that discovery requests "will entail significant legal and accounting expenses to complete" is not a proper basis for refusing to participate in discovery). And despite Defendant's assertion that his status as a foreign defendant somehow insulates him from this rule (Mot. ¶ 40), courts have also often denied motions to stay discovery pending resolution of a personal jurisdiction challenge even where the defendant was located outside the United States. *See*, *e.g.*, *Bridgestone Ams., Inc.* v. *Int'l Bus. Machs. Corp.*, 2016 WL 11786196, at *3 (M.D. Tenn. July 6, 2016) (declining to stay discovery although the movant was located in Japan, as the party's "fingerprints . . . [we]re all over this case"). Defendant has therefore failed to prove that proceeding with discovery in the ordinary course will impose any substantial cognizable burden on him, much less one that will negate the undue prejudice to Plaintiff and its creditors.

## IV. Plaintiff Intends to Seek Jurisdictional Discovery.

Defendant's motion to stay previews his intent to place personal jurisdiction at issue through his motion to dismiss. Plaintiff intends to oppose that motion, and, in the alternative, seek jurisdictional discovery. *See APWU* v. *Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (holding that courts may grant jurisdictional discovery when "jurisdictional facts are placed in dispute"); *see also Alibaba Grp. Holding Ltd.* v. *Alibabacoin Found.*, No. 18-cv-2897 (S.D.N.Y. Oct. 22, 2018), ECF No. 71 (granting jurisdictional discovery in the context of a motion for a preliminary injunction).

Defendant seeks to limit the Court's decision to an all-or-nothing approach regarding discovery (Mot. ¶ 41), but, at the very least, discovery as to personal jurisdiction may be necessary for this Court to decide Defendant's forthcoming motion to dismiss. "Where the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on

jurisdiction in order to aid the plaintiff in discharging that burden." *Compagnie Des Bauxites de Guinee* v. *L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).  The Third Circuit has further clarified that the plaintiff is only required to "present[] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Eurofins Pharma US Holdings* v. *BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (second alteration in original) (quoting *Toys "R" Us, Inc.* v. *Step Two, S.A.*, 318 F.3d, 446, 455 (3d Cir. 2003)).

Though Defendant alleges that he has no contacts with the United States that could justify personal jurisdiction (Mot. ¶ 2), as described above, his actions in operating Waves and Vires, along with his previous interactions with the Debtors can, in the aggregate, be sufficient to confer jurisdiction over Defendant.  In addition to these bases for jurisdiction, Plaintiff reasonably believes that Defendant might have additional information that, if discovered, could be used to further establish personal jurisdiction over Defendant.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should deny Defendant's Motion, or in the alternative, order discovery as to the issue of personal jurisdiction.

Dated:  January 16, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        cobb@lrclaw.com
        mcguire@lrclaw.com
        robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Stephen Ehrenberg (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: ehrenbergs@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com

*Counsel for Plaintiff in Adv. Pro. No. 23-50221*