## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br>　　　　　　　　　Plaintiff,<br><br>- against -<br><br>ALEKSANDR "SASHA" IVANOV, NUMERIS LTD., DLTECH LTD., and JOHN DOES 1-20,<br>　　　　　　　　　Defendants. | Adv. Pro. No. 24-50221 (KBO) |

## DEFENDANT ALEKSANDR "SASHA" IVANOV'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

**McDERMOTT WILL & EMERY LLP**
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
E-mail: dhurst@mwe.com

Sagar K. Ravi (admitted *pro hac vice*)
500 North Capital Street, NW
Washington, DC 20001
Telephone: (202) 756-8043
E-mail: sravi@mwe.com

**McDERMOTT WILL & EMERY LLP**
Joseph B. Evans (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Cris W. Ray
Daniel H. Kaltman
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
E-mail: jbevans@mwe.com
　　　　dazman@mwe.com
　　　　cray@mwe.com
　　　　dkaltman@mwe.com

*Counsel for Defendant Aleksandr "Sasha" Ivanov*

---

[1]　The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.    SUMMARY OF ARGUMENT ............................................................................ 1

II.   ARGUMENT .......................................................................................................... 2

    A.    **The Trust Has Failed to Establish Personal Jurisdiction
    Over Mr. Ivanov** ..................................................................................... 2

        1.    **Corbital's, Waves's, and Vires's Contacts Do Not
        Confer Personal Jurisdiction over Mr. Ivanov** ..................... 4

        2.    **The U.S. Contacts Alleged by the Trust, Even If
        Attributable to Mr. Ivanov, Do Not Establish Personal
        Jurisdiction Over the Remaining Claims** ................................. 7

        3.    **Reasonableness and Fairness Dictate That Mr. Ivanov
        Not Be Subject to U.S. Jurisdiction** ........................................ 12

        4.    **The Trust Is Not Entitled to Jurisdictional Discovery** ....... 13

    B.    **The Trust Does Not Plead a Claim for Turnover** ............................ 14

    C.    **Mr. Ivanov's Proposal to the Vires DAO Is Not Sufficient for
    an Automatic Stay Claim Against Mr. Ivanov** ................................. 16

    D.    **The Statements Identified by the Trust Cannot Form the Basis of a Deceit
    Claim Under BVI Law** ......................................................................... 17

III.  **CONCLUSION** ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amberson Holdings LLC v. Westside Story Newspaper*,
110 F. Supp. 2d 332 (D.N.J. 2000) ........................................................................6

*Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*,
47 F. App'x 73 (3d Cir. 2002) .............................................................................14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).........................................................................................4, 7

*Byrd v. Aaron's, Inc.*,
2012 WL 12887728 (W.D. Pa. Feb. 17, 2012).......................................................6

*Caribbean Sun Airlines Inc. v. Halevi Enter. LLC*,
2025 WL 250787 (Del. Jan. 21, 2025)...................................................................5

*City of Chicago v. Fulton*,
592 U.S. 154 (2021).........................................................................................16

*Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*,
650 B.R. 803 (Bankr. D. Del. 2023) ...................................................................16

*Dougherty v. Snyder*,
469 F. App'x 71 (3d Cir. 2012) ...........................................................................5

*Electra Aviation, Inc. v. European Org. for the Safety of Air Navigation (In re
EAL (Delaware) Corp.)*,
1994 WL 828320 (D. Del. Aug. 3, 1994) ..........................................................7, 8

*Freeman v. 3Commas Techs. OU*,
2024 WL 4049864 (N.D. Cal. Sept. 3, 2024) .........................................................6

*Gambrill v. CS Disco, Inc.*,
2025 WL 388828, at *13 (W.D. Tex. Jan. 30, 2025).............................................20

*Gilliland v. Hurley*,
2010 WL 830968 (W.D. Pa. Mar. 4, 2010) ....................................................13, 14

*Grant St. Grp., Inc. v. D & T Ventures, LLC*,
2012 WL 13689 (W.D. Pa. Jan. 4, 2012)...............................................................6

*Guidecraft, Inc. v. OJCommerce, LLC*,
2019 WL 2373440 (W.D. Pa. May 20, 2019).......................................................12

*Hadnagy v. Moss*,
    2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ..............................................................13

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ...............................................................................4, 6

*In re Abeinsa Holding, Inc.*,
    645 B.R. 680 (Bankr. D. Del. 2022) .....................................................................14

*In re Coinbase Glob., Inc. Sec. Litig.*,
    2024 WL 4053009, at *12 (D.N.J. Sept. 5, 2024) .................................................20

*In re Lehman Bros. Holdings Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) ....................................................................8

*In re Opus E., L.L.C.*,
    480 B.R. 561 (Bankr. D. Del. 2012) ........................................................................5

*In re Sheehan*,
    48 F.4th 513 (7th Cir. 2022) ..................................................................................9

*In re Windstream Holdings, Inc.*,
    105 F.4th 488 (2d Cir. 2024) ................................................................................16

*In re Worth Collection, Ltd.*,
    666 B.R. 726, (Bankr. D. Del. 2024) ......................................................................5

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................12

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ............................................................................................15

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ..............................................................................................4

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012) ..................................................................................6

*Marnavi S.p.A. v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012) .......................................................................5

*Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
    107 F.3d 1026 (3d Cir. 1997) ...............................................................................13

*MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*,
    65 F. App'x 844 (3d Cir. 2003) ..............................................................................3

*Nicholas v. Saul Stone & Co.*,
   224 F.3d 179 (3d Cir. 2000)..........................................................................4

*Patterson ex rel. Patterson v. F.B.I.*,
   893 F.2d 595 (3d Cir. 1990).........................................................................3

*Porthault NA LLC v. Cadeau Exp. Inc.*,
   2009 WL 4573598 (D.N.J. Dec. 2, 2009)..................................................13

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
   547 F. Supp. 2d 365 (D. Del. 2008)...........................................................13

*Robbins Rsch. Int'l Inc. v. Doe*,
   2023 WL 11195909 (C.D. Cal. Oct. 26, 2023)............................................6

*Rocke v. Pebble Beach Co.*,
   541 F. App'x 208 (3d Cir. 2013) ...............................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   474 B.R. 76 (S.D.N.Y. 2012).......................................................................8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   650 B.R. 5 (Bankr. S.D.N.Y. 2023)...........................................................12

*SEC v. Schueler*,
   No. 23-cv-5749 (CBA) (PK) (S.D.N.Y. Feb. 28, 2025)........................7, 11

*Sheehan v. Breccia Unlimited Company*,
   2021 WL 4355363 (N.D. Ill. Sept. 24, 2021) ..............................................8

*SoftwareArt Corp. v. Gopalakrishnan*,
   2008 WL 2876395, at *4 (D.N.J. July 22, 2008)......................................13

*Taylor v. Tumolo*,
   2020 WL 1531877 (E.D. Pa. Mar. 31, 2020).............................................10

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)......................................................................11

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
   2022 WL 611274 (Del. Ch. Mar. 2, 2022)..................................................5

*Walden v. Fiore*,
   571 U.S. 277 ...............................................................................................9

*Warren v. Matthey*,
   2016 WL 215232 (E.D. Pa. Jan. 19, 2016) .................................................3

*Xanadoo, LLC v. Hane*,
2008 WL 11515874 (E.D. Pa. May 5, 2008) ............................................................6

**Foreign Cases**

*Easterbrook v. Hopkins*
[1918] NZLR 428 ...............................................................................................19

*Eco3 Capital Ltd v. Ludsin Overseas Ltd*
[2013] EWCA Civ 413 .........................................................................................18

**Statutes**

Bankruptcy Code § 362(a)(3) ..................................................................................16

I.     **SUMMARY OF ARGUMENT**

Mr. Ivanov moved to dismiss the case brought by Alameda—now the FTX Recovery Trust (the "<u>Trust</u>")—based on a lack of personal jurisdiction and for failure to state its turnover, automatic stay, fraud, and conversion claims (the "<u>Motion</u>").[1] The Trust has now admitted that it did not and could not properly allege a claim for conversion under BVI law. The Trust therefore only has three remaining claims, which should be dismissed on two independent grounds.

*First*, the Trust fails to establish personal jurisdiction over Mr. Ivanov with respect to its remaining claims, which relate to investments that Bahamas-based Alameda made through Vires, a decentralized liquidity protocol on the Waves blockchain governed by Seychelles law. Mr. Ivanov's Motion conclusively established—and the Trust does not contest—that the Vires Terms of Use prohibited any U.S. person or entity from accessing or using Vires. Nor does the Trust contest a single fact asserted by Mr. Ivanov in his sworn declaration, which makes clear that he *individually* had no U.S. contacts relating to Vires until the Debtors reached out to him in Dubai.

Instead of focusing on Mr. Ivanov's contacts with the United States, the Trust attempts to ensnare Mr. Ivanov in a jurisdictional web by alleging U.S. contacts of a separate limited liability company, non-party Corbital, LLC ("<u>Corbital</u>"). To start, the lack of a single reference to Corbital in the Complaint speaks volumes as to its irrelevance to the claims at issue here. In any event, this method of jurisdictional pleading is impermissible. Corbital is a distinct legal entity, separate and apart from Mr. Ivanov. Because the Trust has utterly failed to allege any facts that would support a finding that Mr. Ivanov is an alter ego of Corbital, its contacts with the United States cannot create jurisdiction over Mr. Ivanov. Accordingly, the court should dismiss the remaining claims in the Complaint for lack of personal jurisdiction.

---

[1]     Capitalized terms not defined herein have the same definitions set forth in the Motion.

*Second,* even if the Court has jurisdiction over Mr. Ivanov—which it does not—the Trust's remaining claims should be dismissed. The Trust's baseless claims for turnover and violations of the automatic stay both fail for the same, simple reasons: Mr. Ivanov never had possession, custody, or control over the assets, and Mr. Ivanov took no affirmative action toward the Trust's assets. The Trust essentially is upset that the Vires DAO community voted to block the vesting of its assets after it was revealed to be part of a massive fraud. Instead of making its own proposal and explaining to the community why the earlier proposal should be reversed—which it can still do today—the Trust sat on its hands for two years and then sued one member of the Vires community when he alone could not approve the proposal and cannot reverse it. The Trust's assets *cannot* be released—by Mr. Ivanov or anyone else—until a new proposal is submitted to and approved by the Vires DAO community. That undeniable fact dooms the Trust's claims.

Finally, the Trust does not state a claim for deceit for three reasons, each of which is sufficient to grant the Motion: (1) the Trust fails to plead that Alameda actually received any of the statements it identifies, much less that it took some action in reliance on those statements; (2) the Trust cannot show the statements underlying its claim were actually false or misleading or otherwise constituted actionable misrepresentations; and (3) the Trust fails to plausibly allege the elements of falsity and knowledge of falsity, which are insufficient and entirely based on an unsubstantiated, anonymous blog post. Accordingly, the Trust's remaining claims should be dismissed.

## II.   ARGUMENT

### A.   THE TRUST HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER MR. IVANOV

As an initial matter, the Trust does not argue for and effectively concedes that it cannot establish general jurisdiction over Mr. Ivanov, whose domicile is the United Arab Emirates. Opp'n

at 23. In fact, the Trust failed to respond to a single fact that Mr. Ivanov put forth in his declaration: (1) he is a citizen of Russia and Ukraine; (2) he lives and works in Dubai; (3) he has never been a citizen or resident of the United States; (4) he does not own property in the United States; (5) he has no bank accounts in the United States; (6) he has never been employed in the United States; (7) he has only visited the United States three times, which were unrelated to Vires; (8) he did not make any posts related to Vires while in the United States; and (9) perhaps most importantly, the Vires Terms of Use prohibits U.S. persons and entities from using Vires. *See* Adv. D.I. 15 ¶¶ 2-9. "Where an issue of fact . . . is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue." *Warren v. Matthey*, 2016 WL 215232, at *5 (E.D. Pa. Jan. 19, 2016) (citation omitted).

The only issue before the Court then is whether the Trust has satisfied its burden to establish specific jurisdiction over Mr. Ivanov in the United States. But neither the Opposition nor its nearly 250 pages of exhibits provide any "actual proofs" or evidence to support the exercise of specific jurisdiction over *Mr. Ivanov*. *See Patterson ex rel. Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). Rather, the Trust resorts to the oft attempted—but rarely successful—tactic of entangling the activities and contacts of a defendant, here an individual, with non-party Corbital, Waves, and Vires, to manufacture specific jurisdiction where none exists. *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 850 (3d Cir. 2003) (rejecting the plaintiff's "attempt to ensnare [two individual defendants] in a jurisdictional web by reciting [their company's] contacts" because doing so "ignores and obfuscates [the company's] separate legal identity"). When the issues are focused on the contacts that *do* matter—namely *Mr. Ivanov's U.S. contacts* relevant to *each claim*—it is clear the Court lacks personal jurisdiction.

### 1.    Corbital's, Waves's, and Vires's Contacts Do Not Confer Personal Jurisdiction over Mr. Ivanov

As the Trust correctly notes, specific jurisdiction is proper (1) "if *the defendant* has 'purposefully directed' his activities at residents of the forum" *and* (2) "the litigation results from alleged injuries that 'arise out of or relate to' *those activities*." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (emphasis added); Opp'n at 24. "For the contacts to satisfy the second prong, there must be a *strong* relationship among the defendant, the forum, and the litigation." *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (emphasis added) (quotation marks omitted). It is axiomatic that "jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in" a particular forum. *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Rather, "[e]ach defendant's contacts with the forum state must be assessed individually." *Id.* at 781 n.13.

The Trust identifies the following U.S. contacts of non-parties Corbital d/b/a Waves Labs and the "Waves ecosystem" in its attempt to create U.S. jurisdiction over Mr. Ivanov, mostly without specifying which claim they relate to or the basis for imputing them to Mr. Ivanov:

- Formation of Corbital in Delaware on November 9, 2021 (Opp'n at 25 (citing Dunne Decl. Ex. 4));
- Corbital's announcement on March 28, 2022—after Alameda completed its investments on Vires—of the launch of Waves Labs, its "intention to headquarter in Miami," and the hiring of U.S. employees (*id.*; Dunne Decl. Ex. 6);
- Corbital's application on August 8, 2022 to transact business in Florida as of February 10, 2022, which lists Aleksandr Rubin as the manager of Corbital and Mr. Ivanov as a member (*id.* (citing Dunne Decl. Ex. 10));
- The Waves and Waves Labs websites using U.S. company Cloudflare, Inc. ("Cloudflare") for security reasons (*id.* at 26 (citing Dunne Decl. Exs. 27-30)); and
- The Vires website being hosted on a server provided by a U.S. company (*id.* at 26 (citing Dunne Decl. Exs. 25-26)).

Crucially, the Trust fails to show that Mr. Ivanov was involved in any of Corbital's U.S. contacts.

Even if the Trust could show Mr. Ivanov's personal involvement in these U.S. contacts, Corbital is an LLC formed under the laws of Delaware, and it is therefore a distinct legal entity separate from Mr. Ivanov. *Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012) ("[E]ven single-member LLCs have a legal identity separate from their members."); *Caribbean Sun Airlines Inc. v. Halevi Enter. LLC*, 2025 WL 250787, at *6 (Del. Jan. 21, 2025) ("[B]eing an artificial entity, [an LLC] can act only through its agents."). As the Trust acknowledges, the contacts of an LLC can be attributed to a member only if there is a finding that the individual member is an alter ego of the LLC. Opp'n at 25 n.10. However, the Trust's allegations in its Complaint and the Opposition fail to allege a single one of the alter ego factors Delaware courts consider[2] and do not come close to meeting the high bar for disregarding an LLC's corporate structure. *In re Worth Collection, Ltd.*, 666 B.R. 726, 739-40 (Bankr. D. Del. 2024) ("Delaware courts take the corporate form and corporate formalities very seriously and disregard that form only in the exceptional case." (quotation marks and citation omitted)). Thus, the Trust cannot impute Corbital's U.S. activities to Mr. Ivanov. *See Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, , 2022 WL 611274, at *3 (Del. Ch. Mar. 2, 2022) (finding allegations of sole ownership and "few if any" corporate formalities do not come close to adequately alleging a veil-piercing claim for an LLC).

Moreover, the Trust alleges that the websites of Waves Exchange and Waves Labs (two non-parties) use Cloudflare, a U.S. company, for security services,[3] and that the Vires website is hosted on a server in the United States. Opp'n at 26. According to the Trust, these contacts show that Mr. Ivanov (an individual) "willingly submitted to jurisdiction in the United States." *Id.* Again,

---

[2]    *See Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (describing list of factors considered for alter ago analysis); *In re Opus E., L.L.C.*, 480 B.R. 561, 570 (Bankr. D. Del. 2012) (applying factors to LLC).

[3]    The Trust cites to Exhibit 31 of the Dunne Declaration, which appears to be Terms of Use for Cloudflare's "Websites and Online Services" that are "publicly available without a subscription or a Cloudflare account." This exhibit is therefore entirely irrelevant.

however, the Trust has failed to establish that Mr. Ivanov is an alter ego of Waves or Vires, such that their alleged U.S. contacts are attributable to him in an individual capacity. But even if the Trust could make such a showing, the Trust "cites no cases supporting the proposition that selecting an Internet network services company with its headquarters in [the forum] establishes personal jurisdiction in [the forum]." *Robbins Rsch. Int'l Inc. v. Doe*, 2023 WL 11195909, at *2 (C.D. Cal. Oct. 26, 2023) (noting "Cloudflare is an international company"). "[T]hat [Corbital] allegedly consented to personal jurisdiction in [the forum] in disputes with Cloudflare does not establish personal jurisdiction over this action brought by [the Trust], who [is] not alleged to be a party to the service agreement." *Freeman v. 3Commas Techs. OU*, 2024 WL 4049864, at *1 (N.D. Cal. Sept. 3, 2024); *see also Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332, 335 (D.N.J. 2000) ("The contract . . . does nothing more than establish a 'host server' connection in the [forum]. It is unimaginable that such a contract, without any additional contacts, could serve to subject a defendant to personal jurisdiction.").[4]

Finally, the Trust fails entirely in its attempt to rebut the cryptocurrency-related cases in the Motion as "inapposite." Opp'n at n.12. Surprisingly, the Trust argues that "the cases cited by [Mr. Ivanov] were based largely on the actions of their companies, their partners, and unrelated third parties." *Id*. But by roping in Corbital and statements of Corbital employees, that is ***exactly***

---

[4]   The cases cited by the Trust are inapposite. In *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (Opp'n at 26), the court determined that an individual defendant was subject to jurisdiction in Connecticut where the defendant (1) knowingly used servers in Connecticut "to send an email which itself constituted the alleged tort" and (2) such tortious conduct was directed towards a Connecticut corporation. Here, there is no allegation that *Mr. Ivanov's* conduct giving rise to the claims at issue involved Cloudflare's service or a U.S. server or targeted a U.S. company. And while the Trust does cite some cases that discuss websites in the specific jurisdiction context, two of the cases found that was insufficient to establish personal jurisdiction. *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021); *Grant St. Grp., Inc. v. D & T Ventures, LLC*, 2012 WL 13689, at *6-7 (W.D. Pa. Jan. 4, 2012). The remaining cases cited involved contacts at the "heart of this legal action" that involved a company in the forum, *Byrd v. Aaron's, Inc.*, 2012 WL 12887728, at *6 (W.D. Pa. Feb. 17, 2012), or the "litigation a[rose] directly" from a website registration in the forum, *Xanadoo, LLC v. Hane*, 2008 WL 11515874, at *1 (E.D. Pa. May 5, 2008).

what the Trust attempts to do here. *Id.* ("[T]he contacts of [Mr. Ivanov's] corporations . . . can be attributed to him."). In its attempt to distinguish the Motion's case law, the Trust's arguments instead directly support the cryptocurrency-related cases that dismissed claims on personal jurisdiction grounds.[5]

> **2.      The U.S. Contacts Alleged by the Trust, Even If Attributable to Mr. Ivanov, Do Not Establish Personal Jurisdiction Over the Remaining Claims**

The Trust's new allegations regarding Corbital and the U.S.-based website services used by Waves and Vires—even if they are properly attributable to Mr. Ivanov—do not establish personal jurisdiction over Mr. Ivanov because the Trust fails to explain how they "arise out of or relate to" the Trust's remaining claims. *Burger King Corp.*, 471 U.S. at 472. Whether under the "minimum contacts" or the "effects" tests, the Trust fails to establish specific jurisdiction.

> *a.      The Automatic Stay Claim*

The only claim that the Trust meaningfully seeks to argue there is personal jurisdiction over is the violation of the automatic stay. Opp'n at 27-29. In doing so, the Trust relies almost entirely on the alleged violation of the automatic stay itself to establish specific jurisdiction. That is impermissible. As a threshold matter, "unless [Mr. Ivanov] had the 'minimum contacts' with the United States needed for this Court and the Bankruptcy Court to exercise jurisdiction over [him], the automatic stay and stay order did not operate against [him]." *Electra Aviation, Inc. v. European Org. for the Safety of Air Navigation (In re EAL (Delaware) Corp.)*, 1994 WL 828320,

---

5    Since Mr. Ivanov filed the Motion, another court dismissed claims brought by the SEC for lack of personal jurisdiction where the defendant was a U.S. citizen who resided in Finland where he founded several blockchain offerings and raised hundreds of millions of dollars by selling tokens globally, including to some U.S. residents. *SEC v. Schueler*, No. 23-cv-5749 (CBA) (PK) (S.D.N.Y. Feb. 28, 2025) (ECF No. 57) (Ravi Decl., Ex. F). The court rejected the SEC's theory of jurisdiction despite there being U.S. investors because (1) the defendant's online efforts to market and promote the crypto assets, including social media statements, "were globally available and not expressly directed towards the United States"; and (2) the defendant's association with a software developer who may have been in the United States involved activities that "were purely incidental to his presence in the forum." *Id.* at 15, 18-20.

at *16 (D. Del. Aug. 3, 1994); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 474 B.R. 76, 82 (S.D.N.Y. 2012) ("[A] bankruptcy court can enforce the automatic stay extraterritorially only against entities over which it has *in personam* jurisdiction."). Thus, the Trust's attempt to bootstrap the alleged violation of the automatic stay into a jurisdictional hook is unavailing. *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 623-24 (Bankr. S.D.N.Y. 2015) (finding no personal jurisdiction over alleged violations of the automatic stay because "this Court cannot rest its finding of jurisdiction over the defendant on the very subject of the dispute"); *Electra Aviation, Inc.*, 1994 WL 828320, at *16 ("Eurocontrol's alleged violation of the automatic stay cannot itself provide the basis for personal jurisdiction.").

Further, the Trust does not cite a single case in which a court found personal jurisdiction based on actions that constitute an automatic stay violation. Despite the Trust's attempts to distinguish *Sheehan v. Breccia Unlimited Company*, 2021 WL 4355363 (N.D. Ill. Sept. 24, 2021), *aff'd sub nom. In re Sheehan*, 48 F.4th 513 (7th Cir. 2022), that decision reflects the Trust's jurisdictional theory here. Mr. Ivanov is not a resident of the United States; was not in the United States when he posted the Vires DAO governance proposal; posted the proposal to, and addressed questions about it from, Vires customers around the world, *except in the United States* (*see* Mot. at 4); and otherwise purposefully directed no activity to the United States. The Trust argues that Mr. Ivanov's actions are different because he "threatened *to freeze the Debtors' assets*" and allegedly "*froze the assets* when the Debtors did not comply with his demands" at a time "*after they had filed for bankruptcy in the United States*." (Opp'n at 28 (emphasis added).) But, just as in *Sheehan*, the Debtors' "unilateral act of filing for Chapter 11 bankruptcy" is the only reason that Mr. Ivanov's alleged targeting of Bahamas-based Alameda's assets could constitute "expressly aim[ing]" his acts at the United States. *Sheehan*, 2021 WL 4355363 at *4-5.

Because it cannot satisfy the minimum contacts test for any conduct separate and apart from the violation of the automatic stay itself, the Trust relies entirely on the effects test, arguing that it applies because an automatic stay violation is an intentional tort. Opp'n at 28. However, this theory of jurisdiction is inapplicable as discussed above, and in any event, not a single one of the cases cited by the Trust actually involve a discussion of personal jurisdiction. Regardless, the Trust is plainly wrong that Mr. Ivanov "expressly aimed" his conduct at the United States. The only alleged activity directed at the United States that the Trust can point to for this claim is Mr. Ivanov's purported "invit[ation] [to] the U.S. 'liquidators' to contact him." Opp'n at 28. This argument is fundamentally flawed for at least three reasons.

First, what Mr. Ivanov actually posted was, "as a result, I will propose to block the vesting of the Trust's account *until such a time as the incoming liquidators are in contact with us*." Dunne Decl., Ex. 17 at 6 (emphasis added). Critically, there is no reference to "*U.S.*" liquidators. Further, this post was made on November 14, 2022. As has been highly publicized, on November 10, 2022, an FTX Bahamian subsidiary, where Alameda was also based, was put into liquidation proceedings in the Bahamas (where, as opposed to the Delaware proceedings, a "liquidator" actually was incoming). *See* Ravi Decl., Ex. G. Thus, all the Trust can show, at most, is that Alameda's Vires assets were the focus of Mr. Ivanov's post, not the United States. Second, this statement hardly qualifies as an "invitation"; rather, it is an acknowledgement that, at some point in the future, liquidators likely would reach out to Vires to discuss the assets Alameda held on the platform. Finally, even assuming Mr. Ivanov was "inviting" "U.S." liquidators to contact him, there would be no "U.S. liquidators" without the Trust's unilateral act of filing for Chapter 11 bankruptcy protection. "Specific personal jurisdiction cannot be based on the plaintiff's mere presence in the forum or on the 'unilateral activity' of a plaintiff." *Sheehan*, 48 F.4th at 525 (quoting *Walden v.*

*Fiore*, 571 U.S. 277, 285-86). This is precisely why an alleged violation of the automatic stay that took place entirely outside the United States cannot create personal jurisdiction over a foreign defendant. The new allegations regarding Corbital and the use of U.S. companies to service websites are wholly irrelevant.[6] Accordingly, the Trust fails to satisfy its burden to establish jurisdiction over the automatic stay violation.

### b.    The Turnover Claim

The Trust does not even attempt to separately argue that there is specific jurisdiction over the turnover claim. To the extent that the turnover claim is based on the same conduct giving rise to the alleged automatic stay violation, none of those facts have any U.S. connection, let alone any U.S. connection involving Mr. Ivanov. This claim should be dismissed for the same reasons.

### c.    The BVI Fraud Claim

To begin with, the Trust has waived any argument that the Court has specific jurisdiction over the fraud claim under the effects test. Mr. Ivanov moved to dismiss the Trust's fraud claim on that basis, *see* Mot. at 16-19, but the Trust failed to respond to a single of these arguments, *see* Opp'n at 27-29. "Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." *Taylor v. Tumolo*, 2020 WL 1531877, at *11 n.82 (E.D. Pa. Mar. 31, 2020).

But the Court need not find waiver because it is largely uncontested that the alleged facts giving rise to the fraud claim do not involve U.S.-targeted activity by Mr. Ivanov. The Trust makes

---

[6]    Plaintiffs state in a footnote that Mr. Ivanov's contacts "with Plaintiffs' advisors in the United States including by email and over the phone" *after* he allegedly froze the Debtors' assets can suffice as "minimum contacts evidencing his purposeful availment of the forum." Opp'n at 29 n.14. As explained in the Motion, these are insufficient contacts to meet the minimum contacts test. *See* Mot. at 12. But in addition, the Trust's claim for violation of the automatic stay accrued when Mr. Ivanov allegedly froze the Debtors' assets. The later contacts are irrelevant to personal jurisdiction. *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212 (3d Cir. 2013) ("[T]he proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered." (quotation marks and citation omitted)).

much of the fact that Corbital was expanding the "Waves ecosystem" in the United States in or about February and March 2022, and that Mr. Ivanov made statements *after* Alameda's investment on Vires attributing the growth of WAVES, in part, to the launch of Corbital. *See* Opp'n at 25 (citing Dunne Decl. Ex. 13 (Apr 3, 2022 X post); n.1 (an April 7, 2022 interview)). The Trust then confusingly argues that these "efforts to mislead *U.S.* investors in order to perpetrate the very scheme that harmed Plaintiff involved contacts sufficient to establish personal jurisdiction." Opp'n at 25 (emphasis added). The Trust fundamentally fails, however, to connect the dots and explain (1) how *Corbital's* U.S. activities as to *Waves* misled *U.S.* investors (*i.e.*, what were they misled about); (2) how the misleading of U.S. investors facilitated the alleged misrepresentations made to Alameda regarding *Vires* that it allegedly relied on; and (3) how Mr. Ivanov's statements *after* Alameda's Vires investments constituted sufficient minimum contacts with the United States to establish personal jurisdiction over the fraud claim. Simply because Vires operates using smart contracts on the Waves blockchain does not and cannot mean that Corbital's contacts with the United States relating to Waves have anything to do with Vires (one of several decentralized applications on Waves), let alone that they are attributable to Mr. Ivanov.

Moreover, because the statements that allegedly give rise to the fraud claim consisted exclusively of tweets and online publications (Opp'n at 5-7)—almost all of which are not even from Mr. Ivanov personally—the Third Circuit requires "something more," beyond the maintenance or publication on a globally accessible commercial website, to evidence purposeful availment of the forum state. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). "Simply post[ing] information on an Internet Web site which is accessible to users in foreign jurisdictions . . . is not grounds for the exercise [of] personal jurisdiction." *Schueler*, No. 23-cv-5749 (S.D.N.Y. Feb. 28, 2025) (Ravi Decl., Ex. F, at 17-18); *see* Mot. at 11 n.14 & 18. The

posts the Trust cites merely trumpet *Waves's* newfound popularity in the United States and the growth of *Waves*. However, it is undisputed that Mr. Ivanov did not make those statements while he was in the United States nor do the posts show Mr. Ivanov targeting U.S. consumers for *Vires*, which prohibited U.S. users. There is thus no personal jurisdiction over this claim.

### 3.     Reasonableness and Fairness Dictate That Mr. Ivanov Not Be Subject to U.S. Jurisdiction

Because Mr. Ivanov has insufficient contacts with the United States, it is unnecessary to consider "notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In any event, "attenuated and weak contacts between [the forum] and the [d]efendants would demand a strong showing of reasonableness." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 650 B.R. 5, 21 (Bankr. S.D.N.Y. 2023). The Trust has failed to make such a showing here, largely for the same reasons set forth in the Motion. Mot. at 12-13.

The Trust begins with the incorrect and unsubstantiated assertion that Mr. Ivanov maintains an address in the United States by inexplicably identifying Corbital's Miami address as Mr. Ivanov's residence. Opp'n at 31. A simple Google search shows that 2509 North Miami Avenue is an office building and coworking space, not a residential building.[7] Mr. Ivanov is not currently and never has been a resident of the United States, and the Trust has not challenged the validity of his sworn statements establishing this fact, nor has the Trust established the location of any other witnesses and evidence. *Guidecraft, Inc. v. OJCommerce, LLC*, 2019 WL 2373440, at *6 (W.D. Pa. May 20, 2019) (exercising jurisdiction is unreasonable where neither party in interest was a resident of the forum and "witnesses would have to travel more than 1,000 miles to the forum state"), *report and recommendation adopted*, 2019 WL 2371645 (W.D. Pa. June 5, 2019).

---

[7]     Wynwood, https://wynwoodmiami.com/development_projects/print-house/ (last visited April 18, 2025).

The remainder of the Trust's arguments concern alleged efficiency and interests in adjudicating matters related to its bankruptcy in Delaware. But two of the Trust's original claims were claims under the law of the British Virgin Islands, a tacit acknowledgement that there is decreased interest in adjudicating these cases here. And if the bankruptcy claims are dismissed— as they should be—and the only remaining claim is fraud under BVI law, there would be little interest in a U.S. bankruptcy court adjudicating a BVI claim brought by a Bahamas-based plaintiff.

### 4.    The Trust Is Not Entitled to Jurisdictional Discovery

Jurisdictional discovery may be granted only if the plaintiff has provided "factual allegations [that] suggest the possible existence of requisite contacts between the defendant and the forum State *with reasonable particularity*." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 376 (D. Del. 2008) (internal quotations omitted). "Rather than pointing to specific facts they would seek to discover to cure deficiencies with both minimum contacts and relating to/arising out of analyses, [the Trust does] not provide adequate support granting jurisdictional discovery." *Hadnagy v. Moss*, 2023 WL 114689, at *8 (E.D. Pa. Jan. 5, 2023) (collecting cases); *Porthault NA LLC v. Cadeau Exp. Inc.*, 2009 WL 4573598, at *3 (D.N.J. Dec. 2, 2009). When the "defendant is an individual, the presumption in favor of discovery is reduced." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). The Trust has not established any possible relevant U.S. contacts from Mr. Ivanov with reasonable particularity because most of the contacts the Trust identifies are those of a non-party LLC with no connection to the Trust's claims.[8] The Court should not waste additional time and resources to

---

[8]    The cases the Trust cites do not support a basis for jurisdictional discovery here. The plaintiff in *SoftwareArt Corp. v. Gopalakrishnan* alleged that the defendant had "sent approximately fifty consultants to New Jersey on the behalf of" a competitor of the plaintiff. *See* 2008 WL 2876395, at *4 (D.N.J. July 22, 2008). And the "individuals" the court ordered to engage in jurisdictional discovery in *Gilliland v. Hurley*, 2010 WL 830968, (W.D. Pa. Mar. 4, 2010), were Chad Hurley and Steve Chen—the *U.S.* founders of YouTube. *Id.* at *1. Moreover, the court severely limited discovery to interrogatories and a telephonic deposition concerning exactly two phone

allow the Trust to fish for facts to support its claims. *Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 47 F. App'x 73, 77 (3d Cir. 2002).

Finally, the Trust suggests, without any supporting authority and factual allegations, that jurisdictional discovery is appropriate because Mr. Ivanov dissolved the two Seychelles companies that operated the Waves blockchain and Vires. But, at the risk of repetition, the Trust has utterly failed to allege any minimum relevant U.S. contacts by these entities or that Mr. Ivanov was the alter ego of either entity. Because the Trust offers no reason to think that jurisdictional discovery concerning these entities would reveal any information about *Mr. Ivanov's* contacts with the *United States* relevant to the *remaining claims at issue*, jurisdictional discovery should be denied.

### B.     THE TRUST DOES NOT PLEAD A CLAIM FOR TURNOVER

For a turnover claim against Mr. Ivanov, the Trust has the burden to show that Mr. Ivanov himself has "possession, custody, or control" over the assets at issue. *In re Abeinsa Holding, Inc.*, 645 B.R. 680, 690 (Bankr. D. Del. 2022), *aff'd*, 653 B.R. 713 (D. Del. 2023). The Trust's own Complaint and Opposition make clear that Mr. Ivanov does not.

*First*, the Trust acknowledges in the Complaint that Vires—not Mr. Ivanov—holds the assets at issue in the turnover claim. The Vires protocol is a decentralized "lending protocol on the Waves blockchain" that operated entirely through the "Vires smart contract." Compl. ¶ 28. The Trust further admits that "Plaintiff had $90,359,718.855452 held in the USDN ***vesting contract on Vires Finance***." Opp'n at 13 (citing Compl. ¶ 60) (emphasis added). And the Trust agrees with Mr. Ivanov in its Opposition that "Plaintiff's assets ***remain on the Vires protocol***." Opp'n at 14.

*Second*, the Trust seems to suggest that Mr. Ivanov's November 14, 2022 "***propos[al]*** that *Vires* block the vesting of the [Trust's] account," Compl. ¶ 61 (emphasis added) (internal quotation

---

calls that allegedly formed the oral agreement at issue. *Id.* at *1, 4. The Trust has not similarly alleged the existence of requisite contacts with such reasonable particularity.

marks omitted), means that Mr. Ivanov had "possession, custody, or control" over the assets, Opp'n at 13-14. The Trust is incorrect. Mr. Ivanov's proposal reflects his expectation that the community would vote on it; the proposal by itself does not establish Mr. Ivanov's possession, custody, or control over the vesting assets. "It is the defendant's actions, not his expectations, that empower . . . courts to subject him to judgment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011). More importantly, it is clear from this statement that Mr. Ivanov proposes that "Vires"—not himself—will "block the vesting." Compl. ¶ 61. The Trust does not cite any authority that would permit it to bring a claim against Mr. Ivanov under these circumstances.

*Lastly*, and most importantly, Vires DAO's *subsequent* approval of that proposal and the Vires protocol's implementation of that proposal is not an act by Mr. Ivanov to exercise "possession, custody, or control" over the assets. In an effort to create an act of control by Mr. Ivanov, the Trust attempts to impute Vires DAO's action to Mr. Ivanov because Vires DAO was "controlled by Ivanov." *Id.* Yet, despite the Trust pleading this assertion multiple times throughout the Complaint (*see e.g.*, ¶¶ 28, 48, 49, 52, 61), the Trust puts forth zero factual allegations concerning Mr. Ivanov's purported control of the Vires DAO. Indeed, numerous exhibits attached to the Opposition support the fact that during the relevant time, the Vires DAO was a community organization that had fair voting mechanisms and that the Debtors were aware of this.[9] Given the Trust's allegations of Mr. Ivanov's "control" over the Vires DAO are entirely conclusory, and the clear statements included in the Trust's own filings indicating the opposite, this Court should

---

[9]    *See, e.g.*, Dunne Decl., Ex. 7 at 3 (Mr. Ivanov: "And the community is actually able to vote for it, [you] know? So if the community decides that, this is the right path to take, they could vote for it."); Ex. 11 at 5 ("The decentralized gVires voting allows Users to suggest, debate, and implement changes to the Protocol and control all related aspects of [Vires]"); Ex. 17 at 4, 6 (Mr. Ivanov: "Several routes were taken by the Vires team, proposed and voted on by the community to resolve the crisis and make all users whole. . . . Throughout this crisis, ViresDAO has relied on its community to make decisions."); Ex. 19 at 5 (Trust's Counsel: "Further to your post referenced above, as well as the Vires.finance community vote to restrict access to Alameda's assets pending direction from the Debtors."); Ex. 20 at 1 ("Mr. Ivanov: "Lifting import and export restrictions on [V]ires. Also increasing limits. Please vote.").

completely disregard that assertion.[10] Because the Trust fails to plead Mr. Ivanov has "possession, custody, or control" over Alameda's assets, this claim should be dismissed.

### C.   MR. IVANOV'S PROPOSAL TO THE VIRES DAO IS NOT SUFFICIENT FOR AN AUTOMATIC STAY CLAIM AGAINST MR. IVANOV

As explained in the Motion, *Vires* retained the Trust's property after the filing of the bankruptcy, and under *Fulton*, mere retention is not the kind of affirmative act that violates the automatic stay. The Trust responds that *Mr. Ivanov* took an affirmative post-petition act when he made a proposal to the Vires DAO to block the vesting of the Trust's assets. But standing alone, Mr. Ivanov's proposal had no effect unless a majority of the Vires DAO community voted in favor of it by a wide enough margin. The act of making the proposal did nothing to "interfere with" or exercise control over estate property because it had no effect on its own.

"The Supreme Court has repeatedly held that actions that interfere with the debtor's property do not necessarily violate the automatic stay." *In re Windstream Holdings, Inc.*, 105 F.4th 488, 498 (2d Cir. 2024) (citing *City of Chicago v. Fulton,* 592 U.S. 154, 156 (2021)). Here, Mr. Ivanov's act in making the proposal did not, on its own, interfere with anything; at most it was "only factually likely, as opposed to legally certain, to affect [the Trust's]" property. *Id.* That activity is fundamentally "different from the type of conduct proscribed by § 362(a)(3) of the Bankruptcy Code" and is not sufficient to violate the automatic stay. *Id.* at 497. If the Trust had its way, a mere proposal or suggestion to take action with respect to a debtors' property would be an automatic stay violation. But the Trust has not identified any precedent that supports its theory here.

---

[10]   *Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ("[W]hen an assertion [] expresses an inference without setting forth the underlying facts on which the conclusion is based or states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory. . . . Such naked assertions are not entitled to the presumption of truth.").

The Trust will likely rely on its conclusory allegations that Mr. Ivanov "controlled" the Vires DAO. But as explained above, the Trust provides no factual allegations to support that conclusory assertion, such as Mr. Ivanov's holdings of VIRES compared to the rest of the Vires DAO community. This allegation therefore is not entitled to any presumption of truth or inferences drawn in the Trust's favor for the same reasons described above. *See supra* at at 15 n.9 & 16 n.10.

### D.    THE STATEMENTS IDENTIFIED BY THE TRUST CANNOT FORM THE BASIS OF A DECEIT CLAIM UNDER BVI LAW

The Trust fundamentally fails to make out three of the elements of deceit under BVI law: (1) the alleged misrepresentation must have induced the plaintiff to act or refrain from acting and thus it must, of course, have been known to the plaintiff; (2) the statement must have been false or otherwise actionable under the BVI law of deceit; and (3) the statement must have been made with the knowledge of its falsity, which requires that the defendant have an intention to deceive. *See generally* Opp'n at 15; Mot. at 26.

The Trust's deceit claim is based entirely on the following three representations:

- First, a September 22, 2021 statement that "vires.finance APY's for stable coins are 30-70% now!" Opp'n at 17.
- Second, statements from March 9, 2022 that the Vires protocol and Waves Exchange were "crazy profitable" and that investors should "jump in before the imminent influx of thousands of new users." *Id*.
- Third, statements contained in the February 2022 Terms of Use that Vires was "fully decentralized" and "managed by a decentralized community." *Id.*

Each of these statements fails to qualify as deceit under at least one of the elements above.

*First*, the Trust does not identify when or how the Trust encountered each alleged representation. Instead, the Trust attempts to gloss over this fundamental point through misplaced reliance on an evidentiary presumption of inducement. Opp'n at 18 n.8. The presumption of inducement does not, as the Trust appears to suggest, obviate the need for the plaintiff to alleged

that it *actually received* the misrepresentation and that it took some action *in response* to it. *Eco3 Capital Ltd v. Ludsin Overseas Ltd* [2013] EWCA Civ 413 at [77] (Herbert Decl., Ex. G).

Moreover, the alleged act of reliance on which the Trust's deceit claims rests (depositing approximately $80 million in USDC or USDT on Vires) occurred over the period March 5-12, 2022. Compl. ¶¶ 30, 84. But the "crazy profitable" and "jump in" statements on which the Trust alleges it relied were made in a post on March 9, 2022, four days *after* the Trust had made the majority of its deposits. Compl. ¶ 30. The Trust *cannot* have relied on those statements when making those deposits because the statements had not yet been made.

*Second*, the Trust depends on claims that it has not plausibly alleged were false or misleading. The claim that lenders could receive 30-70% APY for lending stable coins on Vires is misplaced because the Trust pleads no facts suggesting Mr. Ivanov did not *honestly believe* these yields were achievable. But more importantly, they were *in fact* the yields being offered at the time the statement was made in September 2021—six months before Alameda invested on Vires. As the Vires.Finance website from September 16, 2021 shows, Vires actually was offering APYs for the USDT and USDC stablecoins at 59.39% and 67.85%, respectively. Ravi Decl., Ex. H. This statement was publicly available, permitting Alameda to confirm the veracity of the statement for itself. Therefore, this statement was accurate when made and cannot be the basis for a deceit claim.

The Trust makes the same mistake in its reliance on supposed misrepresentations concerning the decentralized nature of the Vires DAO. As an initial matter, the Trust does not even attempt to attribute the statement to Mr. Ivanov himself. Worse still, the Trust pleads no definition of "decentralized" that Vires failed to satisfy. Instead, the Trust infers that the "fully decentralized" claim was knowingly false because Mr. Ivanov allegedly had substantial influence over Vires governance. But as the Trust's *own evidence* shows, Mr. Ivanov did not "control" the Vires DAO,

and in any event, controlling influence or leadership in a project does not render the descriptors "fully decentralized" and "managed by a decentralized community" false. *Supra* at 15 n.9 & 16 n.10.

*Third*, the statements that Waves products were "crazy profitable" and that investors should "[j]ump in before the imminent influx of thousands of new users" are inactionable. Claims of "crazy profitability" are precisely the sort of advertising hype that no reasonable investor would take as a literal guarantee of profit. In *Easterbrook*, which the Trust relies on (Opp'n at 20-21), the defendant described the relevant business investment as "a little gold-mine" and "one of the best businesses in town." *Easterbrook v. Hopkins* [1918] NZLR 428. Moreover, the buyer was, at the same time, furnished with actual weekly turnover figures that could have allowed the buyer to gauge these claims for herself. *Id.* at 442-43. The court in *Easterbrook* noted that "these statements might have been viewed differently if they had been made to a person experienced in business" but ultimately based its holding on the fact that the buyer was inexperienced and the defendant was in a place of trust and confidence. *Id.* at 443. Here, Alameda was one of the most sophisticated players in the cryptocurrency industry, Mr. Ivanov was not acting in any kind of advisory capacity to Alameda, and Alameda had plenty of publicly available information to determine for itself whether Waves was "crazy profitable" at the time.

Similarly, the suggestion that investors should "[j]ump in before the imminent influx of thousands of new users" is not inactionable because it is obviously a predictive statement. The *only* basis on which it could be an actionable misrepresentation is if Mr. Ivanov did not genuinely believe that there would be such an influx. The Trust offers no well-pled facts that Mr. Ivanov did not hold that belief. Indeed, the Trust itself argues that the point of making the statement was to "inflate the value of WAVES tokens [to] prop up the profitability of the Vires protocol and Waves

Exchange." Opp'n at 17. If that was in fact the point of the statement, Mr. Ivanov had to believe there would be an influx of users, whether prompted by the statement itself or otherwise.

*Finally*, at bottom, the Trust's argument is that these statements were false and Mr. Ivanov allegedly knew they were false because an unsubstantiated, anonymous blog post accused him of participating in a wide-ranging fraud scheme that rendered Vires "entirely unprofitable and destined to fail." Opp'n at 8, 19-21; Compl. ¶ 36 (citing Dunne Decl. Ex. 14).[11] But the Trust's claim cannot be sustained on an anonymous blog post. *See Gambrill v. CS Disco, Inc.*, 2025 WL 388828, at *13 (W.D. Tex. Jan. 30, 2025) ("District courts have rejected [fraud] claims based on unsubstantiated, anonymous sources" under heightened pleading standards) (collecting cases); *In re Coinbase Glob., Inc. Sec. Litig.*, 2024 WL 4053009, at *12 (D.N.J. Sept. 5, 2024) (same). And even if this scheme actually happened (which it did not), there is still no basis for the allegations that Mr. Ivanov knew or intended that Vires was "destined to fail," that Vires was not offering APYs of 30-70% for stablecoins (when in fact those were the APYs Vires offered), and that the Vires DAO was not decentralized.[12]

## III.   CONCLUSION

For the reasons in the Motion and for the foregoing reasons, the Court should dismiss the Complaint for lack of personal jurisdiction over Mr. Ivanov or alternatively, for failure to state a claim as to Mr. Ivanov.

---

[11]   The Complaint also states in conclusory fashion that "subsequent investigations and reporting determined that it was in fact Ivanov who had controlled many of the wallets that had engaged in the manipulative 'looping' activity," but fails to cite any of that reporting or allege any actual facts supporting this conclusion. Compl. ¶ 39.

[12]   Insofar as the Trust seeks to advance a claim based on statements made in April 2022 concerning the imposition of withdrawal limits, that claim simply cannot succeed. The statements are not statements the Trust could have acted on in March 2022.

Respectfully submitted,

Dated: April 18, 2025
       Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
E-mail: dhurst@mwe.com

- and -

Joseph B. Evans (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Cris W. Ray
Daniel H. Kaltman
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: jbevans@mwe.com
      dazman@mwe.com
      cray@mwe.com
      dkaltman@mwe.com

- and -

Sagar K. Ravi (admitted *pro hac vice*)
The McDermott Building
500 North Capital Street, NW
Washington, DC 20001
Telephone: (202) 756-8043
E-mail: sravi@mwe.com

*Counsel for Defendant Aleksandr "Sasha" Ivanov*